Donald Hager
57 Washington Avenue
Leonardo, New Jersey 07737
Telephone: (732) 872-8746

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2016 JUN -9  A 10: 44

Plaintiff *Pro Se*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD HAGER, an individual, | ) **Civil Action No.:** |
| | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) |
| CITIMORTGAGE, INC., a New York | ) |
| corporation; SELENE FINANCE, LP, a | ) |
| Delaware Limited Partnership; and DOES 1 | ) |
| through 100, inclusive, | ) |
| | ) |
| Defendants. | ) |

COMES NOW Plaintiff DONALD HAGER ("Plaintiff") and complains as follows:

## I.     JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1332(a)

because the amount in controversy exceeds $75,000 and no Plaintiff shares a state of citizenship

with any Defendant.

2.      The Court is the proper venue for this action under 28 U.S.C. Section 1391

because one or more of the Defendants either resides in or maintains executive offices in this

district and all of the relevant real estate is located in this county.

## II.     PARTIES

3.      Plaintiff was and at all times herein mentioned is, a resident of the County of

Monmouth in the State of New Jersey and the lawful owner of a parcel of real property

commonly known as 57 Washington Avenue, Leonardo, New Jersey 07737 (hereinafter "Subject Property").

4.    At all times herein mentioned, Defendants CITIMORTGAGE, INC. (hereinafter "Citi"), is and was, a New York corporation and at all times herein mentioned was conducting ongoing business in the state of New Jersey and claims an interest adverse to the rights, title, and interests of Plaintiff in Subject Property.

5.    At all times herein mentioned, Defendant SELENE FINANCE, LP (hereinafter "Selene"), is and was, a Delaware limited partnership, with headquarters and a principle place of business in Texas, and at all times herein mentioned was conducting ongoing business in the state of New Jersey and claims an interest adverse to the rights, title and interests of Plaintiff in Subject Property.

## III.    FACTUAL ALLEGATIONS
### *THE HOME AFFORDABLE MODIFICATION PROGRAM*

6.    On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, which was later amended with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (collectively, the "Act").

7.    The Act granted the Secretary of the Treasury the authority to restore stability to the financial system, and ensured that this authority is used to protect home values and preserve homeownership.

8.    The Act gave the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, (hereinafter, "TARP").

9.    Congress provided up to $700 billion to the United States Department of the Treasury for funding TARP.

10. The Act required that the Secretary take into consideration the "need to help families keep their homes and to stabilize communities."

11. Furthermore, The Act required that the Secretary "maximize assistance for homeowners" and use its authority over servicers to "minimize foreclosures."

12. On February 18, 2009, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program (hereinafter, "HAMP").

13. HAMP creates and implements uniform loan modification procedures.

14. HAMP is funded by the federal government with TARP funds. At least $75 billion was allocated to HAMP.

15. Under HAMP, the federal government provides incentives to participating loan servicers to enter into agreements with struggling homeowners that will make modifications to existing mortgage obligations in order to make the homeowner's monthly payments more affordable to the homeowner.

### CITI'S BROKEN PROMISES UNDER HAMP

16. Citi has routinely failed to offer permanent modifications to homeowners even though many homeowners had submitted the required documentation. A failure to modify under the HAMP guidelines has caused many homeowners to lose their homes in foreclosure.

17. Aware of the reprehensible practices taking place by mortgage lenders and loan servicers, 49 state attorney generals and the federal government took action against the nation's largest service providers, including Citi. In February of 2012, a settlement was reached. The settlement, known as The National Mortgage Settlement, was the largest consumer financial protection settlement in the history of the United States (hereinafter, "NMS").

18.    The NMS addressed many violations of law committed by Citi and the nation's largest lenders, as well as provided widespread relief to borrowers of these institutions, including restitution payments to those that wrongfully lost their homes to foreclosure at the hands of these lending institutions.

19.    On April 4, 2012, a consent order agreeing to the terms of the NMS (which essentially has the same effect as a court order) was signed by Citi and filed in the United States District Court for the District of Columbia. *See* Exhibit 1.

## *PLAINTIFF, CITI, AND SELENE*

20.    On or about May 6, 2008, Plaintiff was approved for a mortgage loan from Citi in roughly the amount of $195,000 ("the Loan"). Plaintiff subsequently executed a mortgage note and deed of trust, causing the Loan to be secured by the Subject Property. Citi held such security interest.

21.    Subsequent to the creation of the loan, Plaintiff endured a number of financial difficulties, causing Plaintiff to become delinquent on the Loan.

22.    On or about July 7, 2015, Citi offered Plaintiff a trial mortgage modification entailing a 6.5% interest rate and three monthly payments of $2,746.43 due August 1, 2015; September 1, 2015; and October 1, 2015 respectively ("Citi Trial Mod"). *See* Exhibit 2. Plaintiff timely made all of the modification payments required by the Citi Trial Mod.

23.    On or about September 17, 2015, Citi sent Plaintiff a billing statement stating that out of the $2,746.43 October 1, 2015 trial payment, $389.35 was to be applied to principal, $2,075.71 was to be applied to interest, $281.37 was to be "unapplied." Furthermore, the billing statement reflected an outstanding principal balance of $191,311.80. *See* Exhibit 3.

24.    On or about October 16, 2015, Citi sent a written correspondence to Plaintiff

indicating Citi intended to modify the Loan. The modification included a principal balance of $307,931.05, a 6.5% interest rate, and a monthly payment of $1,802.80 ("Permanent Mod"). The Permanent Mod recapitalized all past amounts that were due prior to October 16, 2016. *See* Exhibit 4. Plaintiff subsequently sought information from Citi as to why the Loan's principal balance increased by $116,619.25 in less than one month. To date, Citi has not provided detailed accounting or explanation as to why the Loan's principal balance increased by $116,619.25 in less than one month.

25.    On or about December 1, 2015, Citi transferred the Loan's servicing rights to Selene. Though Plaintiff properly performed his obligations with respect to the Citi Trial Mod agreement, Selene refused to honor the Permanent Mod provided by Citi.

26.    On or about February 19, 2016, Selene offered Plaintiff a trial modification requiring Plaintiff to make a $6,000.00 payment towards the Loan's "suspense" by February 20, 2016, and three additional trial payments of $2,885.86 by April 1, 2016; May 1, 2016; and June 1, 2016 respectively ("Selene Trial Mod"). *See* Exhibit 5. The Selene Trial Mod attempted to bill Plaintiff for past escrow amounts when the Permanent Mod had originally recapitalized all past amounts that were due prior to October 16, 2016.

27.    On or about February 23, 2016, Plaintiff sent a written correspondence to Selene constituting a "qualified written response" requesting pertinent documents pertaining to the servicing of the Loan per 12 U.S.C. §2605. To date, Selene has failed to respond to Plaintiff's qualified written request by failing to provide the Loan's original application, good faith estimate, HUD-1 settlement statement, truth in lending disclosure statement, current promissory note recorded showing lienholder, and affidavit of debt. To date, Selene has refused to provide Plaintiff with the requested documentation. *See* Exhibit 6.

28. Plaintiff has requested that both Citi and Selene provide a detailed accounting demonstrating how all past payments made towards the Loan have been applied. To date, both Citi and Selene have refused to provide a detailed accounting demonstrating how all past payments made towards the Loan have been applied.

29. Additionally, Selene has forced placed an insurance policy on the Loan. Since Plaintiff maintains a separate homeowner's insurance policy, Plaintiff has requested Selene remove the force placed insurance policy to no avail.

30. Plaintiff has requested Selene disclose the identity of the current investor of the Loan so that Plaintiff could properly enforce his legal rights against all relevant parties. To date, Selene has refused to provide the name of the current investor of the Loan.

31. The Subject Property currently holds over $80,0000 in equity and profiting from such equity has motivated Defendants to impede foreclosure alternatives and induce the foreclosure of the Subject Property.

## IV. CAUSES OF ACTION

### COUNT 1

*Violation of Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605*

(Selene)

32. Plaintiff realleges and incorporate by reference paragraphs 1 to 31 of this Complaint.

33. Defendant Selene is a servicer of the Loan, a federally related mortgage loan within the meaning of RESPA, 12 U.S.C. §2605.

34. Selene is a debt collector under the meaning of 12 U.S.C. §2605.

35. On or about February 23, 2016, Plaintiff sent a written correspondence to Selene

constituting a "qualified written response" requesting pertinent documents pertaining to the servicing of the Loan per 12 U.S.C. §2605. To date, Selene has failed to respond to Plaintiff's qualified written request by failing to provide the Loan's original application, good faith estimate, HUD-1 settlement statement, truth in lending disclosure statement, current promissory note recorded showing lienholder, and affidavit of debt. Plaintiff's written requests for information about Plaintiff's account and requests for validation pertained to the servicing of the Loan and were ''qualified written requests'' within the meaning of RESPA.

36.     Defendant deliberately failed to respond in a proper and timely way to Plaintiff's ''qualified written requests'' for information, in violation of 12 U.S.C. §2605(e).

37.     Plaintiff suffered damages as a result of Selene's failure to respond to Plaintiff's qualified written requests for information. Defendant's failure to respond to Plaintiff's qualified written requests have prevented Plaintiff from obtaining the proper documentation that would inform Plaintiff of his legal rights.

38.     WHEREFORE, Plaintiff demands judgment against Defendants for actual, statutory, treble and/or punitive damages, and attorney's fees and costs, along with any other and further relief as the court deems just and proper, pursuant to 12 U.S.C. §2605.

## COUNT 2

*Violation of New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et seq.*

(All Defendants)

39.     Paragraphs 1 through 38 are realleged as though fully set forth herein.

40.     N.J.S.A. 56:8-1 et seq., ("CFA") prohibits "the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

connection with the sale or advertisement of any merchandise or real estate, or with the

subsequent performance of such person as aforesaid, whether or not any person has in fact been

misled, deceived, or damaged thereby..."

41.    Defendants made deceptive misrepresentations in the following manners:

    a.    On or about July 7, 2015, Citi offered Plaintiff a trial mortgage modification

        entailing a 6.5% interest rate and three monthly payments of $2,746.43 due

        August 1, 2015; September 1, 2015; and October 1, 2015 respectively ("Citi Trial

        Mod"). *See* Exhibit 2. Plaintiff timely made all of the modification payments

        required by the Citi Trial Mod.

    b.    On or about September 17, 2015, Citi sent Plaintiff a billing statement stating that

        out of the $2,746.43 October 1, 2015 trial payment, $389.35 was to be applied to

        principal, $2,075.71 was to be applied to interest, $281.37 was to be "unapplied."

        Furthermore, the billing statement reflected an outstanding principal balance of

        $191,311.80. *See* Exhibit 3.

    c.    On or about October 16, 2015, Citi sent a written correspondence to Plaintiff

        indicating Citi intended to modify the Loan. The modification included a

        principal balance of $307,931.05, a 6.5% interest rate, and a monthly payment of

        $1,802.80 ("Permanent Mod"). The Permanent Mod recapitalized all past

        amounts that were due prior to October 16, 2016. *See* Exhibit 4. Plaintiff

        subsequently sought information from Citi as to why the Loan's principal balance

        increased by $116,619.25 in less than one month. To date, Citi has not provided

        detailed accounting or explanation as to why the Loan's principal balance

        increased by $116,619.25 in less than one month.

d. On or about December 1, 2015, Citi transferred the Loan's servicing rights to Selene. Though Plaintiff properly performed his obligations with respect to the Citi Trial Mod agreement, Selene refused to honor the Permanent Mod provided by Citi.

e. On or about February 19, 2016, Selene offered Plaintiff a trial modification requiring Plaintiff to make a $6,000.00 payment towards the Loan's "suspense" by February 20, 2016, and three additional trial payments of $2,885.86 by April 1, 2016; May 1, 2016; and June 1, 2016 respectively ("Selene Trial Mod"). *See* Exhibit 5. The Selene Trial Mod attempted to bill Plaintiff for past escrow amounts when the Permanent Mod had originally recapitalized all past amounts that were due prior to October 16, 2016.

f. On or about February 23, 2016, Plaintiff sent a written correspondence to Selene constituting a "qualified written response" requesting pertinent documents pertaining to the servicing of the Loan per 12 U.S.C. §2605. To date, Selene has failed to respond to Plaintiff's qualified written request by failing to provide the Loan's original application, good faith estimate, HUD-1 settlement statement, truth in lending disclosure statement, current promissory note recorded showing lienholder, and affidavit of debt. To date, Selene has refused to provide Plaintiff with the requested documentation. *See Exhibit 6.*

g. Plaintiff has requested that both Citi and Selene provide a detailed accounting demonstrating how all past payments made towards the Loan have been applied. To date, both Citi and Selene have refused to provide a detailed accounting demonstrating how all past payments made towards the Loan have been applied.

h.  Additionally, Selene has forced placed an insurance policy on the Loan. Since Plaintiff maintains a separate homeowner's insurance policy, Plaintiff has requested Selene remove the force placed insurance policy to no avail.

i.  Plaintiff has requested Selene disclose the identity of the current investor of the Loan so that Plaintiff could properly enforce his legal rights against all relevant parties. To date, Selene has refused to provide the name of the current investor of the Loan.

j.  The Subject Property currently holds over $80,0000 in equity and profiting from such equity has motivated Defendants to impede foreclosure alternatives and induce the foreclosure of the Subject Property.

k.  Such misrepresentations were made with the intent to deceive Plaintiff and induce Plaintiff's reliance upon the misrepresentations.

42.  Plaintiff justifiably relied on Defendants' omissions and deceptive practices and suffered damages as a result.

43.  Defendants' statements were directly related to mortgage loans and thus affect commerce, falling within the scope of the CFA.

44.  Plaintiff was damaged as a result Defendants' misconduct because Plaintiff has been forced to pay amounts towards the Loan that are higher than the contractually agreed amounts. Defendants' refusal to modify the Loan payments at the contractually agreed upon amounts have caused Plaintiff to lose equity in the Subject Property, pay unnecessary interest to Defendants, and incur monetary damages in an amount to be determined. As a result, Defendants have been unjustly enriched and Plaintiff has suffered embarrassment in his community and the slander of his reputation due to the fact that illegitimate foreclosure

proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Moreover, Plaintiff has suffered severe anxiety and severe emotional distress due to his home being illegitimately foreclosed upon.

## COUNT 3

### *Breach of Contract*

45.     Plaintiff realleges and incorporates by reference paragraphs 1 to 44 of this Complaint.

46.     On or about July 7, 2015, Citi offered Plaintiff a trial mortgage modification entailing a 6.5% interest rate, requiring Plaintiff to make three monthly payments of $2,746.43 due August 1, 2015; September 1, 2015; and October 1, 2015 respectively ("Citi Trial Mod").

47.     Plaintiff timely made all of the modification payments required by the Citi Trial Mod. Such payments constituted the acceptance of Citi's offer and created an agreement.

48.     On or about October 16, 2015, Citi sent a written correspondence to Plaintiff indicating Citi intended to modify the Loan. The modification included a principal balance of $307,931.05, a 6.5% interest rate, and a monthly payment of $1,802.80 ("Permanent Mod"). The Permanent Mod recapitalized all past amounts that were due prior to October 16, 2016. *See* Exhibit 4. Plaintiff subsequently sought information from Citi as to why the Loan's principal balance increased by $116,619.25 in less than one month. To date, Citi has not provided detailed accounting or explanation as to why the Loan's principal balance increased by $116,619.25 in less than one month.

49.     On or about December 1, 2015, Citi transferred the Loan's servicing rights to Selene. Though Plaintiff properly performed his obligations with respect to the Citi Trial Mod agreement, Selene refused to honor the Permanent Mod provided by Citi.

50.     On or about February 19, 2016, Selene offered Plaintiff a trial modification

requiring Plaintiff to make a $6,000.00 payment towards the Loan's "suspense" by February 20, 2016, and three additional trial payments of $2,885.86 by April 1, 2016; May 1, 2016; and June 1, 2016 respectively ("Selene Trial Mod"). The Selene Trial Mod attempted to bill Plaintiff for past escrow amounts when the Permanent Mod had originally recapitalized all past amounts that were due prior to October 16, 2016.

51. As an actual and proximate cause of Citi's breach, Plaintiff was damaged.

52. Plaintiff was damaged as a result Defendant's breach because Plaintiff has been forced to pay amounts towards the Loan that are higher than the contractually agreed amounts. Defendant's refusal to modify the Loan payments at the contractually agreed upon amounts have caused Plaintiff to lose equity in the Subject Property, pay unnecessary interest to Defendant, and incur monetary damages in an amount to be determined. As a result, Defendant has been unjustly enriched and Plaintiff has suffered embarrassment in his community and the slander of his reputation due to the fact that illegitimate foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Moreover, Plaintiff has suffered severe anxiety and severe emotional distress due to his home being illegitimately foreclosed upon.

## COUNT 4

### *Fraud*

### (All Defendants)

53. Plaintiff realleges and incorporates by reference paragraphs 1 to 52 of this Complaint.

54. Fraud occurs under any of the following circumstances: When there is an affirmative misrepresentation — the suggestion, as a fact, of that which is not true by one who does not believe it to be true; a concealment or half truth — the suppression of a fact, by one who is bound to disclose it or who gives information of other facts which are likely to mislead

for want of communication of that fact; or a false promise — a promise made without any intention of performing it.

55.     Fraud also occurs when a defendant makes an untrue representation of a material fact without a reasonable ground for its truth or in a manner not warranted by the available information. Such a representation must be made with the intent that the plaintiff would and did rely on it, to his or her detriment and harm.

56.     In this matter, Defendants affirmatively misrepresented material facts and made omissions of material facts, knowing that their representations were false and by making its representations and omissions without reasonable grounds, with the intent that Plaintiffs would rely on its misrepresentations, all to Plaintiff's harm.

57.     These affirmative misrepresentations and omissions were made knowingly by Defendants through their customer services representatives and agents.

58.     Defendants perpetrated their fraud in actions which included but were not limited to the following activities, and as described with specificity in the factual allegations of this claim and the aforementioned factual statements:

> l.  On or about July 7, 2015, Citi offered Plaintiff a trial mortgage modification entailing a 6.5% interest rate and three monthly payments of $2,746.43 due August 1, 2015; September 1, 2015; and October 1, 2015 respectively ("Citi Trial Mod"). *See* Exhibit 2. Plaintiff timely made all of the modification payments required by the Citi Trial Mod.
>
> m. On or about September 17, 2015, Citi sent Plaintiff a billing statement stating that out of the $2,746.43 October 1, 2015 trial payment, $389.35 was to be applied to principal, $2,075.71 was to be applied to interest, $281.37 was to be "unapplied."

Furthermore, the billing statement reflected an outstanding principal balance of $191,311.80. *See* Exhibit 3.

n. On or about October 16, 2015, Citi sent a written correspondence to Plaintiff indicating Citi intended to modify the Loan. The modification included a principal balance of $307,931.05, a 6.5% interest rate, and a monthly payment of $1,802.80 ("Permanent Mod"). The Permanent Mod recapitalized all past amounts that were due prior to October 16, 2016. *See* Exhibit 4. Plaintiff subsequently sought information from Citi as to why the Loan's principal balance increased by $116,619.25 in less than one month. To date, Citi has not provided detailed accounting or explanation as to why the Loan's principal balance increased by $116,619.25 in less than one month.

o. On or about December 1, 2015, Citi transferred the Loan's servicing rights to Selene. Though Plaintiff properly performed his obligations with respect to the Citi Trial Mod agreement, Selene refused to honor the Permanent Mod provided by Citi.

p. On or about February 19, 2016, Selene offered Plaintiff a trial modification requiring Plaintiff to make a $6,000.00 payment towards the Loan's "suspense" by February 20, 2016, and three additional trial payments of $2,885.86 by April 1, 2016; May 1, 2016; and June 1, 2016 respectively ("Selene Trial Mod"). *See* Exhibit 5. The Selene Trial Mod attempted to bill Plaintiff for past escrow amounts when the Permanent Mod had originally recapitalized all past amounts that were due prior to October 16, 2016.

q.  On or about February 23, 2016, Plaintiff sent a written correspondence to Selene constituting a "qualified written response" requesting pertinent documents pertaining to the servicing of the Loan per 12 U.S.C. §2605.  To date, Selene has failed to respond to Plaintiff's qualified written request by failing to provide the Loan's original application, good faith estimate, HUD-1 settlement statement, truth in lending disclosure statement, current promissory note recorded showing lienholder, and affidavit of debt.  To date, Selene has refused to provide Plaintiff with the requested documentation.  *See* Exhibit 6.

r.  Plaintiff has requested that both Citi and Selene provide a detailed accounting demonstrating how all past payments made towards the Loan have been applied.

s.  To date, both Citi and Selene have refused to provide a detailed accounting demonstrating how all past payments made towards the Loan have been applied.

t.  Additionally, Selene has forced placed an insurance policy on the Loan.  Since Plaintiff maintains a separate homeowner's insurance policy, Plaintiff has requested Selene remove the force placed insurance policy to no avail.

u.  Plaintiff has requested Selene disclose the identity of the current investor of the Loan so that Plaintiff could properly enforce his legal rights against all relevant parties.  To date, Selene has refused to provide the name of the current investor of the Loan.

v.  The Subject Property currently holds over $80,0000 in equity and profiting from such equity has motivated Defendants to impede foreclosure alternatives and induce the foreclosure of the Subject Property.

w. Such misrepresentations were made with the intent to deceive Plaintiff and induce Plaintiff's reliance upon the misrepresentations.

59.     Defendants' agents intended for Plaintiff to rely on their misrepresentations.

60.     Plaintiffs justifiably relied on all of Defendants' misrepresentations and omissions since Defendants are reputable mortgagees and loan servicers. In reliance upon Defendants' misrepresentations, Plaintiff made unnecessary payments to Defendants and avoided foreclosure alternatives (e.g., refinancing, deed in lieu of foreclosure, short sale, etc.).

61.     Plaintiff was damaged as a result Defendants' misconduct because Plaintiff has been forced to pay amounts towards the Loan that are higher than the contractually agreed amounts. Defendants' refusal to modify the Loan payments at the contractually agreed upon amounts have caused Plaintiff to lose equity in the Subject Property, pay unnecessary interest to Defendants, and incur monetary damages in an amount to be determined. As a result, Defendants have been unjustly enriched and Plaintiff has suffered embarrassment in his community and the slander of his reputation due to the fact that illegitimate foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Moreover, Plaintiff has suffered severe anxiety and severe emotional distress due to his home being illegitimately foreclosed upon.

## V. **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all issues raised in the complaint.

## VI.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

1.     For the Court to issue a temporary restraining order, a preliminary injunction, and/or a permanent injunction enjoining Defendants and their agents from engaging in any foreclosure activity with respect to Subject Property.

2.   For the Court to enter judgment in favor of Plaintiff.

3.   For the Court to order a detailed accounting of all payments made towards the Loan and how Defendants have applied such payments.

4.   For the Court to award Plaintiff the monetary equivalent of attorney's fees and costs.

5.   Special damages to account for Plaintiff's severe emotional distress.

6.   Punitive damages.

7.   For such other and further relief as the Court deems just and proper.

8.

June 9, 2016                                Respectfully submitted,

                                            DONALD HAGER
                                            Plaintiff *Pro Se*
                                            57 Washington Avenue
                                            Leonardo, New Jersey 07737

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

DONALD HAGER, an individual,

|  |  |
|---|---|
| *Plaintiff* | ) |
| | ) |
| | ) |
| CITIMORTGAGE, INC., a New York corporation; | ) Civil Action No. |
| SELENE FINANCE, LP, a Delaware Limited Partnership; | ) |
| and DOES 1 through 100, inclusive, | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* THE CORPORATION TRUST COMPANY
AGENT FOR SELENE FINANCE, LP
820 BEAR TAVERN ROAD
WEST TRENTON, NJ 08628

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
DONALD HAGER
57 Washington Avenue
Leonardo, New Jersey 07737
Telephone: (732) 872- 8746

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

_____

My fees are $ _____ for travel and $ _____ for services, for a total of $    0    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

DONALD HAGER, an individual,

*Plaintiff*

CITIMORTGAGE, INC., a New York corporation;
SELENE FINANCE, LP, a Delaware Limited Partnership;
and DOES 1 through 100, inclusive,

*Defendant*

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
THE CORPORATION TRUST COMPANY
AGENT FOR CITIMORTGAGE, INC.
820 BEAR TAVERN ROAD
WEST TRENTON, NJ 08628

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

DONALD HAGER
57 Washington Avenue
Leonardo, New Jersey 07737
Telephone: (732) 872-8746

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                     .

☐ I personally served the summons on the individual at *(place)*

on *(date)*                     ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                     , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*                     , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                     ; or

☐ I returned the summons unexecuted because                     ; or

☐ Other *(specify):*

My fees are $                for travel and $                for services, for a total of $      0      .

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR ‥ 4 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA,
*et al.*,

Plaintiffs,

v.

BANK OF AMERICA CORP. *et al.*,,

Defendants.

**12 0361**

Civil Action No. _____

## CONSENT JUDGMENT

WHEREAS, Plaintiffs, the United States of America and the States of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii,

Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota,

Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico,

New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South

Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming,

the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of

Columbia filed their complaint on March 12, 2012, alleging that Wells Fargo & Company and

Wells Fargo Bank, N.A. (collectively, "Defendant") violated, among other laws, the Unfair and

Deceptive Acts and Practices laws of the Plaintiff States, the False Claims Act, the Financial

Institutions Reform, Recovery, and Enforcement Act of 1989, the Servicemembers Civil Relief Act, and the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

WHEREAS, the parties have agreed to resolve their claims without the need for litigation;

WHEREAS, Defendant, by its attorneys, has consented to entry of this Consent Judgment without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent Judgment is entered as submitted by the parties;

WHEREAS, Defendant, by entering into this Consent Judgment, does not admit the allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this Court;

WHEREAS, the intention of the United States and the States in effecting this settlement is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant;

AND WHEREAS, Defendant has agreed to waive service of the complaint and summons and hereby acknowledges the same;

NOW THEREFORE, without trial or adjudication of issue of fact or law, without this Consent Judgment constituting evidence against Defendant, and upon consent of Defendant, the Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is therefore ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a), and 1367, and under 31 U.S.C. § 3732(a) and (b), and over Defendant. The Complaint states a claim upon which relief may be granted against Defendant. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

2

## II.   SERVICING STANDARDS

2.    Defendant shall comply with the Servicing Standards, attached hereto as Exhibit
A, in accordance with their terms and Section A of Exhibit E, attached hereto.

## III.   FINANCIAL TERMS

3.    *Payment Settlement Amounts.* Defendant shall pay into an interest bearing escrow
account to be established for this purpose the sum of $1,005,233,716, which sum shall be added
to funds being paid by other institutions resolving claims in this litigation (which sum shall be
known as the "Direct Payment Settlement Amount") and which sum shall be distributed in the
manner and for the purposes specified in Exhibit B. Defendant's payment shall be made by
electronic funds transfer no later than seven days after the Effective Date of this Consent
Judgment, pursuant to written instructions to be provided by the United States Department of
Justice. After Defendant has made the required payment, Defendant shall no longer have any
property right, title, interest or other legal claim in any funds held in escrow. The interest
bearing escrow account established by this Paragraph 3 is intended to be a Qualified Settlement
Fund within the meaning of Treasury Regulation Section 1.468B-1 of the U.S. Internal Revenue
Code of 1986, as amended. The Monitoring Committee established in Paragraph 8 shall, in its
sole discretion, appoint an escrow agent ("Escrow Agent") who shall hold and distribute funds as
provided herein. All costs and expenses of the Escrow Agent, including taxes, if any, shall be
paid from the funds under its control, including any interest earned on the funds.

4.    *Payments to Foreclosed Borrowers.* In accordance with written instructions from
the State members of the Monitoring Committee, for the purposes set forth in Exhibit C, the
Escrow Agent shall transfer from the escrow account to the Administrator appointed under

3

Exhibit C $1,489,813,925.00 (the "Borrower Payment Amount") to enable the Administrator to provide cash payments to borrowers whose homes were finally sold or taken in foreclosure between and including January 1, 2008 and December 31, 2011; who submit claims for harm allegedly arising from the Covered Conduct (as that term is defined in Exhibit G hereto); and who otherwise meet criteria set forth by the State members of the Monitoring Committee. The Borrower Payment Amount and any other funds provided to the Administrator for these purposes shall be administered in accordance with the terms set forth in Exhibit C.

5.    *Consumer Relief.* Defendant shall provide $3,434,000,000 of relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraphs 1-8 of Exhibit D, and $903,000,000 of refinancing relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraph 9 of Exhibit D, to remediate harms allegedly caused by the alleged unlawful conduct of Defendant. Defendant shall receive credit towards such obligation as described in Exhibit D.

## IV. ENFORCEMENT

6.    The Servicing Standards and Consumer Relief Requirements, attached as Exhibits A and D, are incorporated herein as the judgment of this Court and shall be enforced in accordance with the authorities provided in the Enforcement Terms, attached hereto as Exhibit E.

7.    The Parties agree that Joseph A. Smith, Jr. shall be the Monitor and shall have the authorities and perform the duties described in the Enforcement Terms, attached hereto as Exhibit E.

8.    Within fifteen (15) days of the Effective Date of this Consent Judgment, the participating state and federal agencies shall designate an Administration and Monitoring Committee (the "Monitoring Committee") as described in the Enforcement Terms. The

4

Monitoring Committee shall serve as the representative of the participating state and federal agencies in the administration of all aspects of this and all similar Consent Judgments and the monitoring of compliance with it by the Defendant.

## V.   RELEASES

9.      The United States and Defendant have agreed, in consideration for the terms provided herein, for the release of certain claims, and remedies, as provided in the Federal Release, attached hereto as Exhibit F.  The United States and Defendant have also agreed that certain claims, and remedies are not released, as provided in Paragraph 11 of Exhibit F.  The releases contained in Exhibit F shall become effective upon payment of the Direct Payment Settlement Amount by Defendant.

10.     The State Parties and Defendant have agreed, in consideration for the terms provided herein, for the release of certain claims, and remedies, as provided in the State Release, attached hereto as Exhibit G.  The State Parties and Defendant have also agreed that certain claims, and remedies are not released, as provided in Part IV of Exhibit G.  The releases contained in Exhibit G shall become effective upon payment of the Direct Payment Settlement Amount by Defendant.

## VI.   SERVICEMEMBERS CIVIL RELIEF ACT

11.     The United States and Defendant have agreed to resolve certain claims arising under the Servicemembers Civil Relief Act ("SCRA") in accordance with the terms provided in Exhibit H.  Any obligations undertaken pursuant to the terms provided in Exhibit H, including any obligation to provide monetary compensation to servicemembers, are in addition to the obligations undertaken pursuant to the other terms of this Consent Judgment.  Only a payment to

5

an individual for a wrongful foreclosure pursuant to the terms of Exhibit H shall be reduced by the amount of any payment from the Borrower Payment Amount.

## VII.   OTHER TERMS

12.    The United States and any State Party may withdraw from the Consent Judgment and declare it null and void with respect to that party if the Defendant does not make the Consumer Relief Payments (as that term is defined in Exhibit F (Federal Release)) required under this Consent Judgment and fails to cure such non-payment within thirty days of written notice by the party.

13.    This Court retains jurisdiction for the duration of this Consent Judgment to enforce its terms. The parties may jointly seek to modify the terms of this Consent Judgment, subject to the approval of this Court. This Consent Judgment may be modified only by order of this Court.

14.    The Effective Date of this Consent Judgment shall be the date on which the Consent Judgment has been entered by the Court and has become final and non-appealable. An order entering the Consent Judgment shall be deemed final and non-appealable for this purpose if there is no party with a right to appeal the order on the day it is entered.

15.    This Consent Judgment shall remain in full force and effect for three and one-half years from the date it is entered ("the Term"), at which time the Defendants' obligations under the Consent Judgment shall expire, except that, pursuant to Exhibit E, Defendants shall submit a final Quarterly Report for the last quarter or portion thereof falling within the Term and cooperate with the Monitor's review of said report, which shall be concluded no later than six months after the end of the Term. Defendant shall have no further obligations under this Consent Judgment six months after the expiration of the Term, but the Court shall retain

6

jurisdiction for purposes of enforcing or remedying any outstanding violations that are identified in the final Monitor Report and that have occurred but not been cured during the Term.

16. Except as otherwise agreed in Exhibit B, each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.

17. Nothing in this Consent Judgment shall relieve Defendant of its obligation to comply with applicable state and federal law.

18. The sum and substance of the parties' agreement and of this Consent Judgment are reflected herein and in the Exhibits attached hereto. In the event of a conflict between the terms of the Exhibits and paragraphs 1-18 of this summary document, the terms of the Exhibits shall govern.

SO ORDERED this _4_ day of _April_ , 2012

_Rosemary M Colly_

UNITED STATES DISTRICT JUDGE

7

# EXHIBIT 2



July 7, 2015

DONALD  HAGER
57 WASHINGTON AVE
LEONARDO, NJ 07737-1223

RE: Property Address:  57 WASHINGTON AVENUE
                       LEONARDO, NJ 07737-1223
CitiMortgage Loan #:   2005366075

Dear CitiMortgage Customer(s),

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided, we are offering you an opportunity to enter into a Trial Period Plan for a mortgage modification. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan to permanently modify your mortgage.

**Proposed Modification Terms**
If you successfully complete the Trial Period Plan by making the required payments, you will receive a modification with an interest rate of **6.500** %, which will be fixed for 20, 30 or 40 years from the date the modification is effective.

**To Suspend Foreclosure**
You must contact us at the number below or in writing at the address provided below no later than **July 21, 2015** , to indicate your intent to accept this offer, or alternatively, submit your first payment by that same date to accept this offer. If you contact us or make payment by **July 21, 2015**, we will not refer your loan to foreclosure; or if your loan has been referred to foreclosure we will not move for foreclosure judgment or order of sale, or conduct a foreclosure sale.

However, if you do not respond by **July 21, 2015**, foreclosure proceedings may continue, and a foreclosure sale may occur, even if such sale is scheduled prior to the first payment due date set forth below. If a foreclosure sale occurs prior to your making the first payment and you failed to respond by **July 21, 2015** , this offer has been revoked.

**To Accept This Offer**
If you have notified us of your intent to accept the offer by **July 21, 2015**, you must make your first Trial Period Plan payment by **8/1/2015**. If you fail to make the first Trial Period Plan payment by **8/1/2015**  and we do not receive the payment by the last day of the month in which it is due, this offer has been revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

**Make Trial Period Payments**
To successfully complete the Trial Period Plan, you must make the Trial Period Plan payments from one of the plans listed below.

|  | 480 Month Term | 360 Month Term | 240 Month Term |  |
|---|---|---|---|---|
| First payment due by 8/1/2015 | $2,746.43 | SNA | SNA |  |
| Second payment due by 9/1/2015 | $2,746.43 | SNA | SNA |  |
| Third payment due by 10/1/2015 | $2,746.43 | SNA | SNA |  |

Once you have selected one of the options above, you will not be able to request a change in the amortization term after the first Trial Period Plan payment is made.

Please send your Trial Period Plan payments to:

CitiMortgage, Inc.
PO Box 689196
Des Moines, IA 50368-9196

If you have questions about your Trial Period Plan or permanent modification requirements, please contact us at the number below.

**Next Steps**

- It is important that you thoroughly review the *Additional Trial Period Plan Information and Legal Notices and Frequently Asked Questions* information attached.

- This Trial Period Plan offer is contingent on your having provided accurate and complete information. We reserve the right to revoke this offer or terminate the plan following your acceptance if we learn of information that would make you ineligible for the Trial Period Plan.

- Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your Modification Agreement, and we have signed the Modification Agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

- You also have the ability to prepay the mortgage loan without restrictions or penalties.

- If you become delinquent after the mortgage has been modified, you may not be eligible for another mortgage loan modification.

- **We must receive each payment in the month in which it is due. If you miss a payment or do not fulfill any other terms of your Trial Period Plan, this offer will end and your mortgage loan will not be modified.**

  *[For modifications involving state Housing Finance Agency administration of federal Hardest Hit Funds, add the following bullet:*
- If you are eligible and qualify for assistance from your state Housing Finance Agency (HFA) using federal Hardest Hit Funds to pay down a portion of the unpaid principal balance of your mortgage loan (HFA Funds), we must receive such HFA Funds from the HFA prior to modifying your mortgage. If we do not receive such HFA funds, you may not be eligible for a modification. However, if you qualify for a modification without the HFA funds, we may offer you a modification of your mortgage.]

- If you have questions about this information, your Trial Period Plan payments, or our mortgage modification requirements, please contact us at the number below.

- If you feel that you cannot afford the Trial Period Plan payments shown above but want to remain in your home, or if you have decided to leave your home, please contact us at the number below to discuss hardship assistance alternatives.

- Please note that except for your monthly mortgage payment amount during the Trial Period Plan, the terms of your existing note and all mortgage requirements remain in effect and unchanged during the Trial Period Plan.

A statement of the interest of the creditor: Program requirements satisfied and approval is in the best interest of the creditor.

The Net Present Value analysis was not performed as it was not required for approval under the Freddie Mac Modification program.

If you have any questions regarding this letter or if you concerned with how we have handled your account, please contact Randal Howland at 1-855-843-2549 ext. , Monday - Thursday 7:00 a.m. - 8:00 p.m. CT, Friday 7:00 a.m. - 5:30 p.m. CT, Saturday 7:00 a.m. - 4:00 p.m. CT, or via email at: randal.douglas.howland@citi.com.  You may also contact me via mail at:  CitiMortgage, Inc., Homeowner Support Team, 1000 Technology Drive, Mail Station 420, O'Fallon, MO 63368.

For help exploring your options at no charge, the Federal government provides contact information for HUD approved housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp/, the Department of Housing and Urban Development at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor List Telephone Number at 1-888-995-4673.

In accordance with federal law, CitiMortgage has designated the following address where you can send a written request for information, a written notice of error, or a qualified written request:

CitiMortgage, Inc.
Attn: Customer Research Team
PO Box 10002
Hagerstown, MD 21747-0002


Sincerely,

CitiMortgage, Inc.


*Enclosures: Additional Information, Frequently Asked Questions, Trial Plan Coupons*


## NOTICES

TTY Services available: Dial 711 from the United States; Dial 1-866-280-2050 from Puerto Rico.

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for CitiMortgage.

If responding through e-mail, please do not include confidential information. E-Mail communication is randomly monitored to ensure quality service.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's

name, address and telephone number.

The purpose of this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

Whenever $600.00 or more of a debt is forgiven as a result of settling a debt for less than the balance owing, we may be required to report the amount of the debt forgiven to the Internal Revenue Service on a 1099-C form, a copy of which will be mailed to you. If you have any questions, please consult your tax advisor.

Information for Massachusetts Residents:

**NOTICE OF IMPORTANT RIGHTS**
**YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

If you elect to appeal, we will provide you a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final, and not subject to further appeal.

If you elect to appeal, you do not have to accept this Standard Modification Trial Period Plan until resolution of the appeal. If we determine on appeal that you are eligible for a different loan modification Trial Period Plan, we will send you an offer for that Trial Period Plan. In that case, you will have 14 calendar days from the date of the appeal decision to indicate your intent to accept either the current Standard Modification Trial Period Plan offer (which may be revised to reflect new Trial Period Plan payment due dates if you have not already accepted it) or the new Trial Period Plan offer.

If you wait to make the payment amount described above until after receiving our appeal decision, your loan will become more delinquent. Any unpaid interest, and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on your mortgage loan during the appeal, and will be added to the balance of your loan if permitted by applicable law.

**Additional Trial Period Plan Information and Legal Notices**

**We will not proceed to foreclosure sale during the Trial Period Plan, provided you are complying with the terms of the Trial Period Plan:**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan or no longer qualify for a permanent loan modification.

- You agree that we will hold the Trial Period Plan payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that we will not pay you interest on the amounts held in the account. If any money is left in this account at the end of the Trial Period Plan and you qualify for a permanent loan modification, those funds will be deducted from amounts that would otherwise be added to your modified principal balance.

- Our acceptance and posting of your payment during the Trial Period Plan <will not be deemed a waiver of the acceleration of your loan and related activities, including the right to resume or continue foreclosure, and> shall not constitute a cure of your mortgage default unless such payments are sufficient to completely cure the default.

**If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:**

- You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree that we will establish an escrow account and that you will pay required escrows into that account.

**Your current loan documents remain in effect; however, you may make the Trial Period Plan payment instead of the payment required under your loan documents:**

You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

*[Mortgage Servicing Regulatory Notice and Right of Appeal* If review is based on an evaluation of the First Complete Borrower Response Package received on or after January 10, 2014 and concerns property serving as the borrower's principal residence, add the following:*

**Modification Program Review**

You were evaluated for mortgage payment assistance based on the eligibility requirements of Freddie Mac, the owner of your mortgage loan.   Borrowers must meet Freddie Mac's eligibility requirements to be eligible for a loan modification Trial Period Plan.

Based on our review of your financial circumstances, you are approved for a Freddie Mac Standard Modification Trial Period Plan. However, you are ineligible for a HAMP Modification. *[Specify the reason(s) for ineligibility using the appropriate model ineligibility reason: and add, as applicable, "You were not evaluated based on other eligibility requirements."]*

**Right to Appeal**
You have the right to appeal our determination not to offer you the loan modification Trial Period Plan(s) listed above. If you would like to appeal, you must contact us in writing at the address provided below, no later than **July 21, 2015,** and state that you are requesting an appeal of our decision. You must include in the appeal your name, property address, and mortgage loan number. You may also specify the reasons for your appeal, and provide any supporting documentation. Your right to appeal expires **July 21, 2015.** Any appeal requests or documentation received after **July 21, 2015,** may not be considered.

# EXHIBIT 3

# EXHIBIT "C"

## Mortgage Account Information                                  citi

| | | Statement Date: 09/17/15 |
|---|---|---|
| Account Number: | 2005366075-7 | How to reach us |
| Payment Due Date: | 10/01/15 | www.citimortgage.com |
| **Amount Due:†** | **$2,746.43** | Homeowner Assistance: 1-877-435-3314* |

Please reference your account number 2005366075 when calling.
*Calls are randomly monitored and recorded to ensure quality service.

**Your dedicated Single Point of Contact is RANDAL D HOWLAND 855-843-2549, Ext 0475081.* ✛**

### Explanation of Amount Due

| | |
|---|---|
| Principal | $283.37 |
| Interest | $949.16 |
| Escrow | $5,035.95 |
| **Regular Monthly Payment** | **$6,268.48** — |
| Past Due Amount | $84,661.07 |
| **Contractual Total Amount Due†** | **$90,929.55** |
| **Trial Period Plan Amount Due†** | **$2,746.43** |

### Account Information

DONALD HAGER
Property Address:  57 WASHINGTON AVENUE
LEONARDO, NJ 07737

| | |
|---|---|
| Type of Mortgage | FIXED RATE LOAN |
| Outstanding Principal Balance | $191,311.80 |
| Interest Rate | 6.50000% |
| Escrow Balance | -$46,311.10 |
| Unapplied Funds Balance | $1,172.68 |
| CitiMortgage Taxes Paid Year to Date | $6,106.92 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $389.35 | $774.51 |
| Interest | $2,075.71 | $4,155.61 |
| Unapplied Funds | $281.37 | $281.37 |
| Total | $2,746.43 | $5,211.49 |

### Transaction Activity (08/19/15 to 09/17/15)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 08/20/15 | Tax Lien Assessment/Tax Penalty | | -$566.18 |
| 08/20/15 | Tax Lien Assessment/Tax Penalty | | -$97.44 |

†The Contractual Payment due is the amount of your regularly scheduled monthly mortgage payments. You are and will continue to be legally obligated to make the full amount of the Contractual Payment, but CitiMortgage has agreed to accept a partial mortgage payment called the Trial Period Plan Payment (TPP Payment) during the term of the Trial Period Plan. The TPP Payment is not applied to your account but is held in a separate unapplied account until CitiMortgage has received enough funds to satisfy a Contractual Payment. The difference between the Contractual Payments and the TPP Payments will be delinquent and continue to accrue until the mortgage is brought current.

Important messages continued on next page

To ensure timely processing, please enclose your check and the coupon below in the envelope provided.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

citi®

P.O. Box 6243
Sioux Falls, SD 57117-6243

**Mortgage Statement Enclosed**

| Account Number: 2005366075-7 | Total Amount Due by 10/01/15: | **$2,746.4** |
|---|---|---|

Do not include cash or account inquiries with your payment.
Please see reverse side for mailing address and phone number changes.

| | | |
|---|---|---|
| | $ | • |
| | $ | • |
| | $ | • |
| | $ | • |
| Total Amount Enclosed | $ | • |

00074050 1     26404029 DTF 00014050

DONALD HAGER
57 WASHINGTON AVE
LEONARDO NJ 07737-1223

Include account number on check. Make payable to CitiMortgage,

CITIMORTGAGE, INC.
PO BOX 183040
COLUMBUS OH 43218-3040



17500 0274643 0274643 0274643 00000020053660757 0005

## Mortgage Account Information

# citi

ACCOUNT NUMBER  2005956075-7

### Transaction Activity (08/19/15 to 09/17/15)

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 08/20/15 | Tax Lien Assessment/Tax Penalty | | -$75.00 |
| 08/20/15 | Tax Lien Assessment/Tax Penalty | | -$3.88 |
| 09/03/15 | Funds Received - Thank you | | $2,746.43 |
| 09/17/15 | Tax Lien Assessment/Tax Penalty | | -$20.00 |

### Important Messages

Any missed Trial Period Plan (TPP) payments are represented in the Past Due Amount under Explanation of Amount Due and not in the Amount Due for this month. If you have missed a TPP payment, please include the missed payment with this monthly payment or contact CitiMortgage to discuss potential options. Please note that the failure to timely make a TPP Payments may result in ineligibility for a permanent modification.

You must pay the full amount due today. Call our office at 1-800-723-7906

This is confirmation of your 09/02/15 phone pay transaction in the amount of $2,746.43

Delinquency expenses are third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorney fees incurred by CM as a result of default.

Your monthly escrow payment has been adjusted to $5,035.95 effective 10/01/15

Please note the enclosed coupon shows the date your payment must be received and total amount due. It also shows the late charge amount and the payment amount due if your payment is late.

205709

# Mortgage Account Information

citi

Statement Date: 06/17/15

**How to reach us**
www.citimortgage.com

| | |
|---|---|
| Account Number: | 2005366075-7 |
| Payment Due Date:† | N/A |
| **Amount Due:†** | **$308,176.84** |

Homeowner Assistance: 1-877-435-3314*
Please reference your account number 2005366075 when calling.
*Calls are randomly monitored and recorded to ensure quality service.

Your dedicated Single Point of Contact is RANDAL D HOWLAND 855-843-2549, Ext 0475081.*
The CitiMortgage Foreclosure Attorney is PHELAN HALLINAN & DIAMOND PC, 856-813-5500.

### Explanation of Amount Due

| | |
|---|---|
| Principal | $192,086.31 |
| Interest | $72,339.75 |
| Escrow | $43,511.69 |
| Past Due Fees/Late Charges | $849.03 |
| Unapplied Funds Allocation | -$609.94 |
| **Total Amount Due†** | **$308,176.84** |

### Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### Account Information

DONALD HAGER
Property Address: 57 WASHINGTON AVENUE
LEONARDO, NJ 07737

| | |
|---|---|
| Type of Mortgage | FIXED RATE LOAN |
| Outstanding Principal Balance | $192,086.31 |
| Interest Rate | 6.50000% |
| Escrow Balance | -$43,511.69 |
| Partial Payment Unapplied Balance | $609.94 |
| CitiMortgage Taxes Paid Year to Date | $4,070.01 |

### Transaction Activity (05/19/15 to 06/17/15)

| Date | Description | Charges | Payments |
|---|---|---|---|
| | NO TRANSACTIONS HAVE OCCURRED SINCE YOUR LAST STATEMENT | | |

### Important Messages

Delinquency expenses are third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorney fees incurred by CM as a result of default.

**\*\*Partial Payments:** Any partial payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. If you are on an approved homeowner assistance plan, partial payments may be held in a separate unapplied account and credited according to the terms of the plan.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

citi ®

P.O. Box 6243
Sioux Falls, SD 57117-6243

**Mortgage Statement Enclosed**

**†THIS AMOUNT DUE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NC
REFLECT FEES AND COSTS NOT BILLED OR POSTED TO YOUR ACCOUNT AS (
THE STATEMENT DATE. YOUR LOAN HAS BEEN ACCELERATED UNDER STATI
LAW AND THE ACCELERATED AMOUNT SHOWN IS NOW DUE. CITIMORTGAGE,
HOWEVER, ALLOWS REINSTATEMENTS OF LOANS ACCELERATED PRIOR TO
FORECLOSURE SALE. YOU MUST CONTACT THE CITIMORTGAGE ATTORNEY
IDENTIFIED ON PAGE 1 FOR YOUR CURRENT REINSTATMENT AMOUNT OR
PAYOFF AMOUNT. IF YOU ARE REPRESENTED BY AN ATTORNEY, PROVIDE A
COPY OF THIS STATEMENT TO YOUR ATTORNEY.**

00001278 1      26501942 DTF 00001278

DONALD HAGER
57 WASHINGTON AVE
LEONARDO NJ 07737-1223



# Delinquency Notice

# citi

As of 02/01/10, you are late on your mortgage payments. Failure to bring your loan current may result in fees and/or additional actions concerning your home.

*Recent Account History*

- Payment due 04/01/15: Unpaid Regular Monthly Payment amount of $77,649.39.
- Payment due 05/01/15: Unpaid Regular Monthly Payment amount of $78,881.92.
- Payment due 06/01/15: Unpaid Regular Monthly Payment amount of $80,114.45.
- Payment due 07/01/15: Unpaid Regular Monthly Payment amount of $81,346.98.
- Payment due 08/01/15: Unpaid Regular Monthly Payment amount of $82,579.51.
- Payment due 09/01/15: Unpaid Regular Monthly Payment amount of $83,812.04.

- **Total Unpaid Regular Monthly Payment amount as of this statement: $90,080.52.**
  This amount does not include any late charges and fees represented in the "Explanation of Amount Due" section on page 1 of your statement or any fees that have not been billed or posted to your account as of the statement date. Please contact CitiMortgage at 1-800-283-7918 to obtain the exact amount needed to cure the default on your account and/or the exact amount needed to bring your account up to date.

Our records indicate that you have agreed to participate in a **Freddie Mac Streamline Modification.**

**If You Are Experiencing Financial Difficulty:** HUD-approved housing counseling agencies are available to provide you with information about mortgage and foreclosure counseling and assistance. Call **1-800-569-4287** to speak with an expert about your individual situation or visit HUD at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

E05703

# EXHIBIT 4



**APN#: 00365.0000 00006.0001**
**Servicer Loan #: 2005366075**

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO 63368-2240
Doc Prep/Booking & Closing

This document was prepared by: DANIELLE MCDONALD
On behalf of:
CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63368

_____[Space Above This Line For Recording Data]_____

**Original Principal Amount:** S 195,000.00
**Unpaid Principal Amount:** S 190,719.83
**New Principal Amount:** S 307,931.05
**New Money (Cap):** S 112,931.05

## Borrower's Copy: Retain for your Records

### LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Modification Agreement"), made this this 16th day of October 2015, between DONALD  HAGER, . ("Borrower") and ("Lender") CitiMortgage, Inc., amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated   5/6/2008   and recorded in Book or Liber OR-8722, at page(s) 1149,  or Document # 2008055047 of the MONMOUTH County Records of MONMOUTH County, New Jersey and (2) the Note ("Note"), bearing the same date as, and secured by, the Security Instrument. which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 57 WASHINGTON AVENUE, LEONARDO, NJ 07737-1223,   the real property described being set forth as follows:

(If recording enter: See attached legal description)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**1. Modified Principal Balance.** As of 10/01/15, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. S 307,931.05 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized

**2. Modified Terms.** S 0.00 of the Unpaid Principal Balance shall be deferred and Borrower will not pay interest or make monthly payments on this amount. The Unpaid Principal Balance less the Deferred Principal Balance (defined in paragraph 3) shall be referred to as the "Interest Bearing Principal Balance" and this amount is S 307,931.05.  Interest at the rate of 6.50000%, will begin to accrue on the "Interest Bearing Principal Balance" as of 10/01/15  and the first new monthly payment on the Interest Bearing Principal Balance will be due on 11/01/15.  Borrower promises to make monthly payments of principal and interest of U.S. S 1,802.80, beginning on the 1st day of November 2015, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be 10/01/55.

\*The escrow payments may be adjusted periodically in accordance with applicable law and therefore borrower's total monthly payment may change accordingly.

**3. Deferred Principal Balance.** If any portion of the New Principal Balance was deferred (the "Deferred Principal Balance"), Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

**4. Partial Prepayments.** If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

**5. Due on Sale.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

**6. Original Loan Documents Compliance.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Modification Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

b. all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

**7. Rights and Remedies; Enforcing Modification Agreement.** Borrower understands and agrees that:

a. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b. All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Modification Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Lender is

presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c. Nothing in this Modification Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d. All costs and expenses incurred by Lender in connection with this Modification Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Modification Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f. If the Borrower does not occupy the property as a principal residence, and property is an investment property, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Also, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Modification Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However,

Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**8. Escrow Items.** Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Modification Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Modification Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to

Borrower any Funds held by Lender.

**9. Bankruptcy Provision.** Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement, I understand that I enter this Modification Agreement voluntarily and that this Modification Agreement, or actions taken by the Lender in relation to this Modification Agreement, does not constitute a demand for payment or an attempt to collect any such obligation

**10. Signature Requirements.** Borrower(s) understand that the Lender's consent to this Modification Agreement is conditioned upon all Borrower(s) properly signing and returning this Modification Agreement without any alterations or deletions and making all monthly payments when due. Any person signing below who signed the Security Instrument but who did not sign the Note is signing only to modify the Security Instrument and to consent to the modification of the Note and is not personally obligated to pay the amounts owed under the Note or the sums Secured by the Security Instrument.

**11. Loan Assumption.** That, as of the Modification Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Modification Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

# EXHIBIT 5



9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 768-3759
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday – Thursday: 8 a.m. - 7 p.m.
Friday: 8 a.m. – 5 p.m.

2/19/2016

DONALD HAGER
57 WASHINGTON AVE
LEONARDO, NJ 07737

Re:   Loan No:        737965
      Property:       57  WASHINGTON AVE, LEONARDO, NJ 07737

Dear Mortgagor(s):

Selene Finance LP ("Selene") is pleased to offer you the enclosed Trial Modification Plan ("Agreement") as the first step to retain your home.  This is your opportunity to prove that you want to keep the property and can afford to do so.  The Agreement is based on certain financial information you provided to us and / or any statements or representations that you made to us directly or through your duly appointed representative or counsel and includes the terms we discussed with you.

Please read the Agreement carefully to ensure that you understand your obligations. You must comply with all of the terms to be considered for a modification or other permanent assistance. Please pay on or before the due date outlined on the Agreement. Also, you are required to make the down payment using a money order, bank certified check, or send a Money Gram payment using code "**6440**".    If the signed Agreement and down payment are not received by the date the first installment is due, the Agreement is void.  Understand, by signing this Agreement it is your responsibility to maintain records evidencing delivery of any and all payments, including the down payment.  The addresses for remitting the payments are:

| *Via Regular Mail* | *Via Overnight Courier* |
|---|---|
| Selene Finance LP | Selene Finance LP |
| P.O. Box 71243 | ATTN: Cashiering Department |
| Philadelphia, PA 19176-6243 | 9990 Richmond Avenue, Suite 400 South |
|  | Houston, TX 77042-1639 |

Please return the signed and initialed Agreement to Selene no later than 3/4/2016.  You may use the enclosed envelope or use one of the other convenient methods listed on the last page.  If you do not return the Agreement by 3/4/2016 or if you fail to meet the requirements of this Agreement, we will void the Agreement and pursue all remedies available to us under the Note and Security Instrument.  If you have any questions concerning this Agreement, you should contact your Single Point of Contact at (877) 768-3759.

Joseph Burns(S)
Loan Resolution Department
Selene Finance LP

Selene Finance LP is a debt collector attempting to collect a debt and any information that is obtained will be used for that purpose.

If you received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property. If you are involved in a bankruptcy please note that Selene Finance LP intends to fully comply with the Code, including with relevant provisions of the automatic stay and the provisions of any confirmed bankruptcy plan.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Selene will not foreclose on the property of a servicemember or his or her dependent during the time, unless pursuant either to a court order or a servicemember's waiver or agreement.

CL101
NMLS #6312

## **Trial Modification Plan**

Re:    Borrower(s):    DONALD HAGER
       Property:       57 WASHINGTON AVE, LEONARDO, NJ 07737
       Loan#:          737965

Borrower executed a promissory note (the "Note") and Mortgage/Deed of Trust/Deed to Secure Debt ("Security Instrument") on **5/6/2008** in the amount of **$195000.00** (the "Loan").

The Property secures the Loan.

Borrower is in default under the terms of the Note and Security Instrument.

In consideration of the benefits which Borrower and the holder of the Note and Security Instrument (the "Lender") may obtain by entering into this Trial Modification Plan (the "Agreement") and for other good and valuable consideration, Borrower and Selene Finance LP ("Selene"), on behalf of the Lender, agree to the following:

| **Date** | **Payment** | **Applied To** |
|----------|-------------|----------------|
| **2/20/2016** | **$6,000.00** | **Suspense** |
| **4/1/2016** | **$2,885.86** | **Suspense** |
| **5/1/2016** | **$2,885.86** | **Suspense** |
| **6/1/2016** | **$2,885.86** | **Suspense** |

**TRIAL MODIFICATION PLAN**

**Borrower agrees to make payments in the amounts shown below on or before the date specified for each payment. Payments will be applied as specified below.**

**YOUR OBLIGATIONS UNDER THIS TRIAL MODIFICATION PLAN**

<u>**PAYMENTS**</u>

The initial down payment under this Agreement must be made with certified funds. This can be done by sending a money order or certified bank check to: Selene Finance, 9990 Richmond Avenue, Ste. 400 South, Houston, TX 77042, or send a Money Gram payment using code "**6440**". The initial down payment must be received no later than 3:00 p.m. central time on the above down payment date. It is your responsibility to maintain records evidencing delivery of any and all payments, including the down payment. Please include the loan number as reference for posting. In addition to the down payment, you must make the monthly payments on or prior to the dates stated above in the Trial Modification Plan Section. Failure to make timely payments shall constitute a default under this Agreement and the Agreement may be void, with Selene having no obligation to offer another Trial Modification Plan.

**This Agreement is NOT designed to cure the default and bring the Loan current. It is specifically designed to implement a short term and temporary repayment plan period. During this repayment plan period, Borrower will make the payments shown above, which will be applied in accordance with the schedule outlined above.**

**If Borrower makes each of the payments as set forth in this Agreement and, if applicable, provides Selene with the financial information described below, Selene, on behalf of the Lender, will offer a permanent modification of the Loan and may assist the Borrower in refinancing the Loan. Borrower authorizes Selene to share information about the loan and Borrower's financial information with lenders who may offer Borrower a new loan.**

IN THE EVENT THAT THE PERMANENT MODIFICATION HAS NOT BEEN RECEIVED OR EXECUTED BY THE BORROWER UPON THE BORROWER'S SUCCESSFUL COMPLETION OF THE AGREEMENT, THE BORROWER MUST CONTINUE MAKING MONTHLY PAYMENTS IN THE AMOUNT AS AGREED UPON IN THE AGREEMENT ON OR BEFORE THE AGREED UPON MONTHLY DUE DATE, UNTIL SUCH DOCUMENTS ARE EXECUTED AND RECEIVED BY SELENE. OTHERWISE, THE PERMANENT MODIFICATION MAY BE DENIED.

<u>**REQUIRED INFORMATION, CONDITIONS**</u>

**Borrower agrees to give Selene's representative access to the property to perform an interior Broker Price Opinion at least thirty (30) days prior to the final payment date shown above. If the Borrower does not allow access to complete the inspection within that timeframe, this Agreement will be void, and Selene will have no obligation to offer another Trial Modification Plan. Moreover, Selene and the Lender may exercise all its rights under the Note and Security Instrument.**

**In the event the property is presently insured by Lender under a "lender placed insurance policy", then Borrower shall obtain his/her/their own homeowner's insurance policy, naming Lender as an additional insured, pursuant to the obligations under the Security Instrument.**

**If Borrower is approved for a modification, Selene will establish (if Borrower does not already have one) and maintain an escrow account for the payment of property taxes, homeowners insurance and, if applicable, flood insurance. There will be no initial cost for establishing the account. Your signature below indicates your acceptance of the establishment and maintenance of the escrow account by Selene.**

<u>**FORECLOSURE NOT DISMISSED**</u>

This Agreement is not a permanent resolution of the default under the Note and Security Instrument. **IN THE EVENT THAT A FORECLOSURE IS PENDING, THE FORECLOSURE ACTION WILL NOT BE DISMISSED OR RESCINDED.** However, while your loan is under review for modification and so long as you remain current under the terms of this Agreement, the foreclosure will be placed on hold for the term of the Agreement. If you default under the terms of the Agreement, the Agreement shall be deemed void, and Selene may proceed with the pending foreclosure without further notice to Borrower.

Initials: _____ _____

**CHANGE IN FINANCIAL CONDITION**

Borrower agrees that upon thirty (30) days written notice, Selene has the right to increase the monthly payment required under this Agreement if Selene has verified that:

- There has been a material change in Borrower's financial condition; or
- There were significant inaccuracies in the financial information last submitted by Borrower, and that Borrower is financially able to make increased payments.

**ADJUSTABLE RATE NOTE**

This Agreement does not alter the manner in which interest is calculated under the Note on an Adjustable Rate Mortgage Loan, or the obligation to pay any interest that accrues during the Agreement term. While this Agreement is in effect, the Note will continue to govern the rate at which interest accrues on the loan balance and how the loan balance is calculated. If interest accrues under the Note at a rate that is subject to periodic adjustments due to changes in an index (an adjustable rate mortgage), this Agreement does not limit or alter the manner in which that rate may change.

Therefore, if there is an increase in the Index Rate under the Note during the Agreement term, interest will accrue on the loan balance at the increased rate. However, your payments under this Agreement will not change with any increase or decrease to the Index Rate. While this Agreement is in effect, you may continue to make payments in the amounts detailed in this Agreement without regard to how the Index Rate may adjust under the terms of your Note.

**TERMINATION CONDITIONS**

This Agreement is automatically terminated under any of the following circumstances:
- The Property is abandoned or left vacant for more than sixty (60) days.
- Borrower no longer uses the Property as a principal residence unless Borrower can evidence a temporary relocation by the primary employer or, if the borrower is an active duty service member in the Armed Services of the United States or a state's National Guard, is assigned to a new post.
- Borrower transfers ownership or interest in the Property without consent of Selene.
- Selene received incorrect information in connection with the Borrower executing this Agreement.
- Borrower fails to meet any of the terms of this Agreement or the original Note and Security Instrument.
- Borrower files bankruptcy.

## CREDIT REPORTING

During the Agreement term, Lender will report the Loan to the appropriate reporting agencies. This report will contain the contractual delinquency status with the comment "Paying under a Partial Payment Agreement". If this Agreement is breached for non-payment, Lender will resume reporting your Loan as delinquent.

## ORIGINAL NOTE AND SECURTY INSTRUMENT

All of the provisions of the Note and Security Instrument, except as provided in this Agreement, remain in full force and effect. Nothing contained in this Agreement will be construed to impair the Security Instrument or effect or impair the Lender's rights or powers under the Note and Security Instrument. This Agreement does not constitute a waiver of the Lender's right to insist upon strict performance in the future.

The offer contained in this Agreement expires and is withdrawn unless this Agreement is executed by each Borrower and received by Selene by the down payment date and the down payment is made in accordance with the terms of this Agreement.

Date: _____

_____
Borrower

_____
Co-Borrower

**You may return the signed and initialed Agreement to one of the following:**

**Selene Finance**
**P.O. Box 422039**
**Houston, TX 77242-4239**
**Fax: (866) 926-5498**
**Email: loanresolution@selenefinance.com**

Re:   Customer(s):   **DONALD HAGER**
      Property Add:  **57 WASHINGTON AVE, LEONARDO, NJ 07737**
      Loan#:       **737965**



9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 768-3759
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday – Thursday: 8 a.m. - 7 p.m.
Friday: 8 a.m. – 5 p.m.

**DONALD HAGER**
**57 WASHINGTON AVE**
**LEONARDO, NJ 07737**

Re:     Pre-Authorized Payments (ACH Debits)
        Loan No.:              737965
        Property Address:      57 WASHINGTON AVE, LEONARDO, NJ 07737

Dear Customer(s):

The attached Authorization Agreement for Preauthorized Payments ("ACH Debit Agreement"), when signed by you and returned to Selene, will evidence your agreement to establish automatic monthly transfers from your bank account on the draft dates and draft amounts shown on the attached Agreement.

PLEASE RETAIN A DUPLICATE COPY OF THE ACH DEBIT AGREEMENTFOR YOUR RECORDS AND RETURN ONE COPY TO SELENE EITHER BY MAIL OR FAX TO:

Selene Finance LP
Attn: Customer Service
P.O. Box 422039
Houston, TX 77242-4239
Fax: (866) 926-5496

If any information is not correct, please contact our Customer Service Department immediately at our toll-free number (877) 735-3637.

Sincerely,

Customer Service
Selene Finance LP

Initials: _____ _____

Loan No.: 737965

**AUTHORIZATION AGREEMENT FOR PREAUTHORIZED PAYMENTS (ACH DEBITS)**

The undersigned hereby authorize Selene Finance LP (Selene) to initiate debit entries to my (our) account indicated below, and the financial institution named below (the "Bank"), to debit the same to such account.  If funds are mistakenly taken from my (our) account, I (we) authorize Selene to initiate a corrective (credit) entry, and the Bank to credit the same to such account.

DEBIT ENTRIES WILL BE MADE TO THE ACCOUNT ON THE DATES SHOWN BELOW, OR IF THE DATE IS A HOLIDAY, ON THE NEXT BUSINESS DAY FOLLOWING THE DATE SHOWN.

Please deduct the amounts shown below on the relevant draft dates:

| | | | |
|---|---|---|---|
| 4/1/2016 | $2,885.86 | | |
| 5/1/2016 | $2,885.86 | | |
| 6/1/2016 | $2,885.86 | | |
| | | | |
| | | | |
| | | | |
| | | | |

The name, address, account number and routing number of my (our) bank is:

| Bank Name | Bank Routing (ABA #)* |
|---|---|
| Address | Account # |
| City, State, Zip | Type of Account<br>□ Checking   □ Savings |

How to identify routing/aba # and account number on checks or deposit slips (checking or savings):

```
|: 123456789 |:  123456789123 ||•1234

     Bank            Bank          Check Number (Do not use)
Routing Number   Account Number
```

This authority is to remain in full force and effect until the earlier of (i) the last Draft Date entered in the table above or (ii) the date Selene has received written notification from me (or either of us) of its termination in such time as to afford Selene a reasonable opportunity to act on it, but in no event less than 20 business days prior to the applicable draft date. Until such request is received by Selene, I (we) agree that Selene shall be fully protected in complying with the terms of this agreement. I (we) also agree that should a draft under this agreement be returned to Selene for insufficient funds (NSF), I will make future payments by other means if requested by Selene, and I may be charged an NSF processing fee if permitted by applicable law.

**Signature(s) as they appear on promissory note:**

_____     _____
BORROWER                 Date          CO-BORROWER                Date

Forbearance to Refinance Plan
Page 7 of 7
CL101

Initials: _____  _____

# EXHIBIT 6

February 23, 2016

SELENE FINANCE
9990 RICHMOND AVE SUITE 400 SOUTH
HOUSTON, TX. 75019

> RE:   QUALIFIED WRITTEN REQUEST (RESPA)
>       REQUEST FOR VALIDATION OF DEBT (FDCPA)
>       HOMEOWNER: DONALD AND CARRIE HAGER
>       PROPERTY ADDRESS: 57 WASHINGTON AVE. LEONARDO, NJ. 07737
>       SELENE LOAN # 0000737965

To Whom It May Concern:

Please accept this correspondence as a Qualified Written Request (QWR) per the Real Estate
Settlement Procedures Act (RESPA), codified as Section 2605 (e) of Title 12 of the United States
Code. Even though some requested documentation was received in the past, the response
contained incomplete or unenforceable documentation, which is pertinent in determining your
organization's ability to collect the debt. Therefore, I am asking that you provide the following
requested documentation immediately:

> ✓  ORIGINAL 1003 LOAN APPLICATION
> ✓  GOOD FAITH ESTIMATE
> ✓  HUD-1 SETTLEMENT STATEMENT
> ✓  TRUTH IN LENDING DISCLOSURES STATEMENT
> ✓  CURRENT PROMISSORY NOTE RECORDED SHOWING LIENHOLDER

In addition to the aforementioned requested documentation, please also furnish the Bailee
Letter as required by the industry during the sale or transfer of debt along with any associated
addendums to the promissory note (to include the allonge). The provisions set forth by TILA, 15
U.S.C. 1641 (f)(2), require the creditor, new owner or assignee of the debt to notify the
borrower in writing of such a sale or transfer. Additionally and to further support the request,
the Uniformed Commercial Code (UCC) also requires that "within 30 days of each assignment,
transfer, or sell, the assignment of true sale must be recorded under States' statute. The dates
of the allonge endorsement(s) and the notarized assignment(s) must match to prove true sales
before a foreclosure can legally occur."

The final document request is pertaining to the Affidavit of Debt and I am requesting a copy be
furnished by your organization as required. All lending institutions and debtors are required to
attach an Affidavit of Debt at the same time this loan was sold or transferred by or to your

1 |

institution and per the FDCPA; this Affidavit must be provided by the seller with proper accounting on the payment history. If this debt has been sold multiple times, please provide an Affidavit for each sale or transfer as is required by federal and state law to prove up the validity of the mortgage debt.

DONALD AND CARRIE HAGER
C/O THE FRESH START FIRM
POST OFFICE BOX 71476
PHOENIX, ARIZONA 85050

I thank you in advance for your cooperation in this matter and ask that you please send all documentation to my attention at the address above as soon as possible.

Sincerely,

DONALD HAGER                                           CARRIE HAGER

2 |