**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD HAGER, an Individual, : | |
| : | Civil Action No. 16-03348 (FLW) (LHG) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| CITIMORTGAGE, INC., a New : | |
| York Corporation; SELENE : | |
| FINANCE, LP, a Delaware Limited : | |
| Partnership; and DOES 1 through : | |
| 100, inclusive, : | |
| : | |
| Defendant. : | |

**WOLFSON, United States District Judge**:

Before the Court is the motion of Defendant Selene Finance, LP, to dismiss the Complaint of *pro se* Plaintiff Donald Hager. Plaintiff contends that Defendant Selene's failure to honor the alleged permanent modification of Plaintiff's mortgage loan offered by Defendant Citi and Defendant Selene's failure to respond to Plaintiff's requests for certain mortgage documents and other information violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.* ("NJCFA"), and the New Jersey common law of fraud. Defendant Selene moves to dismiss on the grounds that Plaintiff has alleged neither a qualified written request, nor actual damages sufficient to state a claim under RESPA, and has failed to allege fraud under either the NJCFA or common law. For the reasons that follow, Defendant Selene's motion is granted in part and denied in part as follows: (i) Plaintiff's RESPA claim (Count I) is dismissed; (ii) Plaintiff's NJCFA claim (Count

1

II) is dismissed to the extent based on the factual predicate of Plaintiff's RESPA claim [Compl. ¶ 41(f)], but Defendant's motion to dismiss Count II is denied on all other bases[1]; and (iii) Defendant's motion to dismiss Count IV is denied on the basis of Plaintiff's claim that Defendant Selene's February 19, 2016 offer of a trial modification misrepresented the amount due on Plaintiff's loan [Compl. ¶ 58 (p)], but Count IV is dismissed on all other bases.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff was approved for a $195,000 mortgage loan from Defendant Citi on May 6, 2008. Compl. ¶ 20. Plaintiff subsequently executed a mortgage note and deed of trust, securing the loan by the property located at 57 Washington Avenue, Leonardo, New Jersey 07737 (the "Property"). *Id.* At some point between May 2008 and December 2014 Plaintiff defaulted on his loan. *Id.* at ¶ 21. On December 5, 2014, the Superior Court of New Jersey, Chancery Division, Monmouth County, entered a final judgment of foreclosure against the Property.[2] On or about July 7, 2015, Defendant Citi offered Plaintiff a trial mortgage modification at a 6.5% interest rate, with three monthly trial payments of $2,746.43 due on August 1, 2015; September 1, 2015; and October 1, 2015. *Id.* at ¶ 22. Plaintiff timely made all three trial payments. *Ibid.*

On September 17, 2015, Defendant Citi sent Plaintiff a billing statement indicating that the outstanding principal balance of Plaintiff's loan was $191,311.80. *Id.* at ¶ 23. On October 16,

---

[1] In briefing, Defendant Selene moved to dismiss Count II only based on Defendant Selene's failure to respond to Plaintiff's alleged qualified written response (Compl. ¶ 41(f)); Defendant Selene did not address Count II based on Defendant Selene's trial modification offer (Compl. ¶ 41(e)) or the allegations in any of the other sub-paragraphs of Count II.

[2] The Court relies on the judgment of foreclosure, which was submitted by Defendant Selene to supplement its briefing on the motion to dismiss and in opposition to the preliminary injunction. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

2015, Defendant Citi sent Plaintiff a letter stating that Defendant Citi intended to permanently modify Plaintiff's loan. *Id.* at ¶ 24. The permanent modification offered a 6.5% interest rate on a $307,931.05 principal balance, with a monthly payment of $1,802.80. *Ibid.* The permanent modification also recapitalized all previous past-due amounts. *Ibid.* At an unspecified time after Plaintiff received Defendant Citi's permanent modification offer, Plaintiff requested that Citi provide an explanation for why the principal balance of Plaintiff's loan was increased from $191,311.80 to $307,931.05 between September and October 2015. *Ibid.* Defendant Citi had not provided such an explanation as of the time the Complaint was filed.

On or about December 1, 2015, Defendant Citi transferred the loan-servicing rights on Plaintiff's loan to Defendant Selene. *Id.* at ¶ 25. Defendant Selene "refused to honor" the permanent modification offered by Citi. *Ibid.*

On February 19, 2016, Defendant Selene offered Plaintiff a trial modification requiring a $6,000 payment by February 20, 2016, and three additional trial payments of $2,885.86 on April 1, 2016; May 1, 2016; and June 1, 2016. *Id.* at ¶ 26. Selene's proposed trial modification did not take into account that previous past-due amounts had been recapitalized in Citi's offered permanent modification. *Ibid.*

On February 23, 2016, Plaintiff sent Defendant Selene a letter requesting copies of 1) Plaintiff's original 1003 loan application; 2) the good faith estimate; 3) the HUD-1 Settlement Statement; 4) the truth in lending disclosures statement; 5) the current promissory note recorded showing the current lienholder; 6) a "Bailee Letter" showing any transfer or sale of the debt and any associated addendums to the promissory note; and 7) an Affidavit of Debt. *Id.* at ¶ 27. As of the date of the filing of the Complaint, Defendant Selene failed to provide any of the requested

3

documents. *Ibid.*[3]

At some time after the servicing rights to Plaintiff's loan were assigned to Defendant Selene, Plaintiff also requested that Defendant Selene provide a detailed accounting of how past payments have been applied to Plaintiff's loan balance. *Id.* at ¶ 28. Defendant Selene has not provided such an accounting. *Ibid.*

Defendant Selene has had a force-placed insurance policy issued on the Property. *Id.* at ¶ 29. Plaintiff maintains a separate homeowner's insurance policy on the property, and requested that Defendant Selene remove the force-placed policy. *Id.* Defendant Selene has not removed the force-placed policy. *Ibid.*

On June 9, 2016, Plaintiff, proceeding *pro se*, filed the four-count Complaint in this case. Count I, for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"), is raised against Defendant Selene only. Counts II (violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*) and IV (common law fraud) are raised against both Defendants Selene and Citi. Count III, a New Jersey state common law claim for breach of contract, does not specify against whom it is brought, but alleges breach by Defendant Citi only. *Id.* at ¶ 51 ("As an actual and proximate cause *of Citi's breach*, Plaintiff was damaged."). The Court thus construes Count III as raised against Defendant Citi only, and, indeed, the parties appear to have briefed Defendant Selene's motion to dismiss as if only Counts I, II, and IV were in issue against Selene.

On October 4, 2016, Plaintiff filed a motion for a temporary restraining order and preliminary injunction, restraining the execution of a sheriff's sale of the Property. The same

---

[3] The Complaint does not explicitly mention whether or not the "Bailee Letter" was ever provided, but asserts elsewhere that no documents have been received in response to Plaintiff's request.

4

day, the Court denied Plaintiff's motion for a temporary restraining order, but granted Plaintiff's request for an expedited briefing schedule on the preliminary injunction motion. The parties fully briefed the motion, and, on October 17, 2016, the parties appeared before the Court telephonically (Plaintiff) or in-person through counsel (Defendants) for a preliminary injunction hearing. The sheriff's sale was scheduled to take place in the late afternoon of October 17, 2016, so the Court convened the hearing in the morning. In advance of the hearing, on October 14, 2016, Defendant Selene, at the Court's request, provided the Court with a copy of the final New Jersey state court judgment of foreclosure on the Property. At the October 17, 2016 hearing Defendants Citi and Selene proffered that no acceptance of Citi's offer of permanent modification had been accepted, and that no payments under the permanent modification had been made. Plaintiff did not offer any evidence in support of his position that a permanent modification of his mortgage loan had been executed. Accordingly, the Court denied Plaintiff's motion and ruled during the hearing — later formalized its ruling in an order issued October 18, 2016 — that any preliminary injunction seeking to invalidate the state court judgment of foreclosure was barred by the *Rooker-Feldman* doctrine, and any preliminary injunction seeking to compel Defendants to honor the terms of the permanent modification lacked sufficient likelihood of success on the merits due to the absence of evidence in support provided by Plaintiff.

Despite the proffers made by Defendants during the preliminary injunction hearing, no motions for summary judgment on the permanent modification issue were forthcoming. Accordingly, the only motion before the Court is Defendant Selene's motion to dismiss.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal.* First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.; see also Iqbal,* 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian,* 696 F.3d at 365 (quoting *Iqbal,* 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The third step of

the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. . . . However, an exception to the general rule is that a "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, *pro se* litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 Fed. Appx. 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d

352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.' " *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## III. ANALYSIS

### A. Count I - RESPA

RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). Congress enacted RESPA to "insure that customers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from . . . certain abusive practices" by loan servicers. 12 U.S.C. § 2601(a). Among other obligations, RESPA imposes a duty upon loan servicers to respond to certain inquires by customer borrowers.  12 U.S.C. § 2605(e)(1)(A). § 2605(e)(1)(A) provides that:

> If any servicer of a federally related mortgage loan receives *a qualified written request* from the borrower . . . *for information relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period.

*Ibid.* (emphasis added). In relevant part, the statute further defines a "qualified written request" as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence . . . that--
>> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Furthermore, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

In order to bring a claim under RESPA, a plaintiff must first identify a violation of one of the statute's obligations and then "'must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605. Additionally, when basing a claim on actual damages, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries.'" *Block v. Seneca Mortg. Servicing*, No.16-CV-0449 FLW/LHG, 2016 WL 6434487, at *22 (D.N.J. Oct. 31, 2016) (quoting *Giordano v. MGC Mortg., Inc*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016)). *See also Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.").

In addition to the statutory requirements, RESPA actions are also governed by a series of regulations under the rulemaking authority of the Consumer Financial Protection Bureau, collectively known as "Regulation X." One of the provisions of Regulation X, entitled "Contact information for borrowers to request information," provides that

> [a] servicer may, by written notice provided to a borrower, establish *an address that a borrower must use to request information in accordance with the procedures in this section.* The notice shall include a statement that the borrower must use the established

9

address to request information. If a servicer designates a specific address for receiving information requests, a servicer shall designate the same address for receiving notices of error pursuant to § 1024.35(c). A servicer shall provide a written notice to a borrower before any change in the address used for receiving an information request. A servicer that designates an address for receipt of information requests must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer.

12 C.F.R. § 1024.36(b) (emphasis added).

In Count I, Plaintiff alleges that Defendant Selene violated RESPA by failing to provide the documents requested in Plaintiff's February 23, 2016 letter. Specifically, Plaintiff alleges that Defendant Selene has failed to provide "the Loan's original application, good faith estimate, HUD-1 settlement statement, truth in lending disclosure statement, current promissory note recorded showing lienholder, and affidavit of debt." Compl. ¶ 35. Plaintiff claims to have suffered damages as a result of Defendant Selene's failure to respond, because Plaintiff was prevented from "obtaining the proper documentation that would inform Plaintiff of his legal rights." *Id.* at ¶ 37. Defendant Selene moves to dismiss Plaintiff's RESPA claim, on the grounds that (i) Plaintiff's February 23, 2016 letter is not a "qualified written request" ("QWR") under RESPA; (ii) Plaintiff's letter, even if a QWR, was never legally received under RESPA's implementing regulations because Plaintiff sent it to the wrong address; and (iii) even were the letter a QWR, and were it received at the correct address by Defendant Selene, Plaintiff has failed to plead actual damages. Defendant's third argument is dispositive, and the Court dismisses Plaintiff's RESPA claim for failure to plead actual damages.

## 1. Qualified Written Request

As noted above, in order to trigger the RESPA obligations of a loan servicer, a qualified written request must be written, must include information identifying the name and account of the borrower, must either state the reasons for the belief of the borrower that the account is in error or

provide sufficient detail regarding other information sought by the borrower, and must "relat[e] to the servicing of [the borrower's] loan." 12 U.S.C. § 2605(e)(1)(A)-(B). Here, Defendant Selene contends that Plaintiff's February 23, 2016 letter fails to meet the last statutory requirement in that the letter requests only documents relating to the origination and validity of the loan, not its "servicing." Although the Third Circuit has yet to discuss the parameters of the statutory definition of "servicing" found in § 2605(i)(3), the Courts in this district to have applied the definition have consistently found that the term does not include documents relevant only to the origination and validity of the loan. As Chief Judge, then Judge, Simandle observed in *Wallace v. Bank of Am.*, No. 11-CV-0038 JBS/KMW, 2011 WL 3859745, at *4 (D.N.J. Aug. 30, 2011):

> The question before the Court is therefore whether "relating to" [servicing] should be read broadly, to encompass virtually any request for information that might indirectly relate to payments, or more narrowly, to exclude requests for information that only relate to payments because the information is about the loan generally. The clear weight of precedent lies with [r]equiring the relationship to be direct, excluding requests that only relate to servicing because they address the validity of the loan or amendment of its terms. And this approach makes sense in the wider context of § 2605, which is concerned with consumer interactions with loan servicers as distinct from loan originators or loan holders, even if those lines have blurred somewhat in the intervening decade.

*See also Cole v. Wells Fargo Bank, N.A.*, No. 12-CV-1932 KM/MAH, 2016 WL 1242765, at *9 (D.N.J. Mar. 30, 2016) (plaintiff "also requests 'original instruments of indebtedness' . . . . This is not properly speaking a request for *information* about the loan; it is a 'show me the note' demand, or perhaps a demand for surrender of the original bearer paper, to which [plaintiff] was not entitled. Nor is it a request for information about the balance, the payments, or the servicing of the loan."); *Mercado v. Bank of Am., N.A.*, No. 12-CV-01123 WJM, 2013 WL 2933217, at *4 (D.N.J. June 13, 2013) ("[L]etters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e).") (internal quotation omitted).

In reaching this conclusion, the courts of this District are in accord with the well-reasoned

precedents of the appellate courts outside of this Circuit, which have considered the issue. In

*Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012), the Ninth Circuit expounded:

> [the] requirement[]—that the letter must request information relating to servicing—ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers. RESPA defines the term "servicing" to encompass only "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." *Id.* § 2605(i)(3). "Servicing," so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors. Perhaps for that reason, Congress drafted the statute so as not to include those matters.
>
> The statute thus distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other. That distinction makes sense because only servicers of loans are subject to § 2605(e)'s duty to respond—and they are unlikely to have information regarding those loans' originations. In summary, we hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e).

*Id.* at 666–67. *Accord Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017); *Matter of Parker*, 655 F. App'x 993, 998 (5th Cir. 2016); *Poindexter v. Mercedes–Benz Credit Corp.*, 792 F.3d 406, 413–14 (4th Cir. 2015); *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015). This Court finds the reasoning of the ninth Circuit in *Medrano* and the concurring Circuit Courts persuasive, in that in order to give "servicing" its plain meaning as defined in the statute, "servicing" cannot be so broadly read as to encompass documents and information that are merely related to other aspects of the loan, such as its origination, transfer, or continuing validity.

Here, reviewing the copy of Plaintiff's February 23, 2016 letter request attached to the Complaint,[4] and interpreting it in the light most favorable to the Plaintiff, Plaintiff requests seven

---

[4] The Court relies on Plaintiff's February 23, 2016 letter in considering the motion to dismiss, as

documents: (i) the original 1003 loan application; (ii) the good faith estimate; (iii) the HUD-1 settlement statement; (iv) the truth in lending disclosures statement; (v) the current promissory note recorded showing lienholder; (vi) the "Bailee Letter"; and (vii) the "Affidavit of Debt."[5] The first four documents are clearly recognizable as documents relevant only to the origination of Plaintiff's loan, and therefore cannot serve as the basis for a RESPA claim. The fifth document requested, a copy of the current recorded promissory note providing the identity of the current lienholder, clearly goes to the validity of Plaintiff's underlying debt, not its servicing. The identity of the current lienholder, and whether the ownership of the promissory note was properly recorded has nothing to do with "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan" or "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). It does, however, go to the authority of the purported holder of the loan to foreclose, which is certainly the purpose for which Plaintiff requested it. Unfortunately for Plaintiff, requests for such documents were not contemplated by the RESPA provision Plaintiff seeks to invoke.

Turning to the sixth document, although "Bailee Letter" appears to be a legal term of art used in the real estate warehouse lending market, not the home mortgage market, it is clear from the context of Plaintiff's letter, that the information sought therein is notice of any sale or transfer of the beneficial interest in Plaintiff's loan to a new owner or assignee.[6] Once again, proper

---

a document attached to the Complaint which is explicitly incorporated by reference into and integral to the Complaint. *In re Burlington*, 114 F.3d at 1426.

[5] As noted above, the Complaint itself only complains that six of the seven documents were not provided. No mention is made of the "Bailee Letter" specifically, although the Complaint suggests that no response was received.

[6] *See, e.g., In re Shareholders Funding, Inc.*, 188 B.R. 150, 159 (Bankr. E.D. Pa. 1995) ("Evidence at trial, for instance, established that other similarly situated lenders utilize a 'Bailee letter' to

documentation of any transfer in the ownership interest of the loan goes to the validity of Plaintiff's underlying debt, not the servicing of Plaintiff's loan.

Finally, the term "Affidavit of Debt," also appears to refer to a legal term of art not frequently discussed in the context of home mortgage cases in the federal courts generally or in RESPA cases in particular. In fact, this Court has been unable to locate a single home mortgage case in this Circuit in which such a document was involved. According to Plaintiff's letter, however, an "Affidavit of Debt" is a document that the seller of a loan must provide to the buyer, which includes an "accounting on the payment history" of the loan. Defendant Selene contends that this document too deals with the origination of Plaintiff's loan and therefore fails to satisfy the requirements of a qualified written request. Defendant is clearly mistaken, as, whatever an "Affidavit of Debt" may be, it is clear that, in Plaintiff's letter, it purports to be a document relevant to the transfer of a beneficial interest in a loan, not to the loan's origination. As Plaintiff's letter also states, albeit in a confusing and convoluted manner, that the Affidavit of Debt includes an accounting of the payment history of Plaintiff's loan, this Court, bearing in mind the particularly permissive standard afforded to the pleadings of *pro se* parties, finds that this document at least may have related to the servicing of Plaintiff's loan. *See, e.g.*, *Emerson v. Seterus, Inc.*, 937 F. Supp. 2d 56, 60 (D.D.C. 2013) (denying defendant's motion to dismiss plaintiff's RESPA claim where plaintiff's letter asked for a copy of "[a]ll account servicing records ... payment records, transaction histories, account histories, accounting records, ledgers and documents that relate to the accounting of this Loan from the inception of this Loan to the present date."). Accordingly, in the absence of additional facts suggesting that an "Affidavit of Debt" does not relate to servicing,

---

clarify their residual interest in a loan when ostensibly transferring complete ownership thereof to a third party. Resource's president, Beale, testified that Resource did not utilize Bailee letters because it did not utilize a warehouse bank.").

Plaintiff's February 23 letter constituted a QWR with respect to at least this one document.

**2. Address**

12 C.F.R. § 1024.36(b) empowers a loan servicer to designate an address that a borrower *must use* to submit any request for information. The Third Circuit has not yet opined on whether failure to submit a request to the designated address alone provides a sufficient basis for the dismissal of a RESPA claim, but other Circuit Courts have so found. After considering the purposes of RESPA and the broad rulemaking authority granted to the administrative agency in drafting Regulation X, the Tenth Circuit concluded that "[r]eceipt [of the written request] at the designated address is necessary to trigger RESPA duties." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013). The Second Circuit agreed, concluding that "Regulation X's grant of authority to servicers to designate an exclusive address is a permissible construction of RESPA, and thus [f]ailure to send the [request] to the designated address . . . does not trigger the servicer's duties under RESPA." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181–82 (2d Cir. 2014) (internal quotations omitted).

Here, Defendant Selene contends that is has designated an address for all information requests, and, as evidenced by the copy of Plaintiff's February 23, 2016 letter attached to the Complaint, Plaintiff failed to send his request to the correct address, sending it instead to Selene's corporate headquarters in Houston Texas. Without commenting on whether the courts of this District should follow the precedents of the Second and Tenth Circuits, this Court observes that the requirements of § 1024.36(b) raise additional questions of fact, which cannot be resolved on Defendant's motion to dismiss. Firstly, although Defendant Selene contends in briefing that the address in Houston Texas to which Plaintiff's letter request was submitted was not the address it designated for the submission of QWRs, nothing in the Complaint or its attachments supports this

proposition. Secondly, § 1024.36(b) requires that, for Plaintiff to be bound to Defendant's designated address, Defendant Selene must have provided prior written notice to Plaintiff including a clear statement that Plaintiff was required to use the designated address to request information. No such statement is included in the Complaint or its attachments. Finally, the section also places requirements on Defendant to publish the designated address on its website if certain conditions are met. The facts necessary to find if this requirement is met are also absent for the Complaint or its attachments. At this stage of the proceeding, Defendant Selene has also failed to provide any supplementary documents or certifications on these points. In the absence of additional facts, therefore, Defendant Selene's argument that Plaintiff's letter was not a QWR because it was sent to the wrong address fails.

### 3.  Actual Damages

Even presuming, however, that Plaintiff had submitted a QWR to the correct address, Defendant Selene would still be entitled to dismissal of Count I because Plaintiff has failed to plead actual damages arising from Defendant Selene's failure to respond to Plaintiff's letter. As a threshold matter, Plaintiff does not claim a pattern of RESPA noncompliance entitling Plaintiff to statutory damages. *Giordano*, 160 F.Supp.3d at 781. The only basis under which Plaintiff proceeds is a claim for actual damages. Plaintiff claims to have suffered actual damages as a result of Defendant Selene's failure to respond to Plaintiff's letter request, because Plaintiff was prevented from "obtaining the proper documentation that would inform Plaintiff of his legal rights." Compl. ¶ 37. As the Court has explained above, to the extent that Plaintiff is referring to the first six documents his letter requested, which went to the origination and validity of Plaintiff's mortgage loan after any transfer of the beneficial interest, Plaintiff cannot have suffered actual damages as a result of Defendant Selene's failure to provide the documents because Defendant Selene was

under no obligation to provide such documents to Plaintiff — and Plaintiff concomitantly was not entitled to have those documents provided to him by Defendant Selene. Without a statutory or regulatory violation by Defendant Selene, Plaintiff cannot have suffered an actionable injury.

As Plaintiff's allegation concerns the "Affidavit of Debt," allegedly setting forth an accounting of the payment history of Plaintiff's loan, the Court also finds that Plaintiff has failed to allege actual damages. Firstly, Plaintiff's claimed loss of information about his legal rights cannot itself be considered "actual damages" under RESPA. *Giordano*, 160 F. Supp. 3d at 781–85 (only categories of actual damages courts have considered are "pecuniary loss" and, in certain but not all cases, "emotional distress"). To hold otherwise would read the actual damages requirement out of a RESPA claim, because, by definition, every time a loan servicer fails to provide any document referencing a legal right of a borrower, the borrower has been "deprived" of information concerning his or her legal rights. Were Plaintiff's claimed damages sufficient, RESPA would become a strict liability statute, which, as discussed above, was clearly not the congressional intent.

Secondly, even extrapolating from Plaintiff's sparse allegations that he suffered injury because without the requested document he was unable to know his legal rights to defend the foreclosure action against the Property and thereby suffered some pecuniary loss, Plaintiff's RESPA claim would still fail for absence of "a causal link between the financing institution's violation and [Plaintiff's] injuries.'" *Giordano*, 160 F. Supp. 3d at 781. The logical chain from Defendant Selene's alleged failure to provide Plaintiff with an accounting of past mortgage payments to Plaintiff suffering foreclosure of his property and some pecuniary loss is too attenuated to meet the standard of *proximate* causation required for actual damages. *See Hutchinson*, 410 F. Supp. 2d at 382. This is made particularly evident by the fact that the final judgment of foreclosure was entered by the New Jersey state court on December 5, 2014, long

17

before Plaintiff sent the February 23, 2016 letter.

Finally, looking, as the parties do in briefing, to the damages claimed by Plaintiff in his fraud counts (Counts II and IV) only, these allegations too fail to set forth actual damages sufficient to state a claim under RESPA. Plaintiff alleges that he was damaged by Defendant Selene's "misrepresentations," including Defendant Selene's failure to respond to the QWR, by 1) having to pay amounts towards his loan that were higher than those contractually agreed upon; 2) losing equity in the Property; 3) paying unnecessary interest to Defendants; and 4) suffering embarrassment, loss of reputation, and severe anxiety and emotional distress due to the foreclosure of his home. Compl. ¶ 44. It is clear on the face of Complaint however, that these damages were not *causally linked* to the failure to respond to the QWR. The alleged additional payments of principal and interest are clearly alleged to have been caused by Defendant Selene's alleged failure to honor the permanent modification granted by Defendant Citi. *Id.* at ¶ 41(e) ("The Selene Trial Mod attempted to bill Plaintiff for past escrow amounts when the Permanent Mod had originally recapitalized all past amounts that were due prior to October 16, 2016"); ¶ 44 ("Defendants' refusal to modify the Loan payments at the contractually agreed upon amounts *have caused* . . .") (emphasis added). Moreover, the loss of equity in the Property and Plaintiff's alleged emotional distress are clearly alleged to have been directly caused by the foreclosure, an event which preceded Defendant Selene's alleged failure to respond to the QWR by over a year. Without any allegations of actual damages, caused by Defendant Selene's alleged noncompliance with the obligations of RESPA, Plaintiff's RESPA claim cannot proceed and is dismissed.

**B. Count II – NJCFA**

In Count II, Plaintiff alleges that Defendant Selene violated the NJCFA by making the following "misrepresentations": 1) attempting in its February 19, 2016 trial modification offer to

18

bill Plaintiff for past amounts that had already been recapitalized by Defendant Citi's permanent modification [Compl. ¶ 41(e)]; 2) failing to respond to Plaintiff's February 23, 2016 letter requesting documents [Compl. ¶ 41(f)]; 3) failing to respond to Plaintiff's request for a detailed accounting [Compl. ¶ 41(g)]; 4) failing to remove the force-placed insurance policy in response to Plaintiff's request [Compl. ¶ 41(h)]; and 5) failing to disclose the identity of the current investor in Plaintiff's loan in response to Plaintiff's request [Compl. ¶ 41(i)]. As indicated above, Plaintiff alleges that he was damaged by Defendant Selene's "misrepresentations" by 1) having to pay amounts towards his loan that were higher than those contractually agreed upon; 2) losing equity in the Property; 3) paying unnecessary interest to Defendants; and 4) suffering embarrassment, loss of reputation, and severe anxiety and emotionally distress due to the foreclosure of his home. Compl. ¶ 44.

The CFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576, (2011). To state a NJCFA claim, a consumer must plead (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two. *Id.* at 577. The Act prohibits affirmative acts and knowing omissions that rise to the level of deceptive trade practices, as well as violations of regulations adopted by the Division of Consumer Affairs made "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance...." N.J.S.A § 56:8–2. With respect to the second prong-"ascertainable loss"-the plaintiff must "demonstrate a loss attributable to conduct made unlawful by the [NJ]CFA," which is "quantifiable or measurable," and not merely "hypothetical" or "speculative." *Thiedemann v. Mercedes—Benz USA, LLC*, 183 N.J. 234, 246–52 (2005).

There are three different categories of CFA violations: (1) "[a]n affirmative

misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive";
(2) "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and
intent"; and (3) "'violations of specific regulations promulgated under the [CFA],'" which are
reviewed under strict liability. *Monogram Credit Card Bank of Ga. v. Tennesen,* 390 N.J. Super.
123, 133 (App. Div. 2007) (internal citations omitted). Unlawful conduct under the CFA is
defined as: "use or employment by any person of any unconscionable commercial practice,
deception, fraud, false pretenses, false promise, misrepresentation, or the knowing, concealment,
suppression, or omission of any material fact with intent that others rely upon such concealment,
suppression or omission, in connection with the sale or advertisement of any merchandise or real
estate, or with the subsequent performance of such person as aforesaid, whether or not any
person has in fact been misled, deceived or damaged thereby." N.J.S.A. § 56:8-2. An
unconscionable commercial practice "[n]ecessarily entails a lack of good faith, fair dealing, and
honesty," and "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud."
Furthermore, "[m]ere consumer dissatisfaction does not constitute consumer fraud." *In re Van
Holt*, 163 F.3d 161, 168 (3d Cir. 1998). In addition, "[t]he misrepresentation has to be one which
is material to the transaction ... made to induce the buyer to make the purchase." *Gennari v.
Weichert Co. Realtors*, 148 *N.J.* 582, 607 (1997).

Furthermore, "Rule 9(b) applies with equal force to fraud actions brought under federal
statutes as to those actions that are based on state law but brought in federal court." *Slimm*, 2013
WL 1867035, at *13 (citing *Frederico*, 507 F.3d at 200; *Christidis*, 717 F.2d at 99). Courts
dismiss NJCFA claims when "Plaintiff's claim for violations of the [NJCFA] does not explain
with the required specificity or otherwise, the date, place or time of the allege fraud and/or who
made the alleged representation." *Donnelly v. Option One Mortg. Corp.*, No. 11–CV–7019, 2013

20

WL 3336766 at *4 (D.N.J. July 1, 2013).

In its motion, Defendant Selene mistakenly characterizes Plaintiff's NJCFA against Selene claim as relying exclusively on the factual predicate of Plaintiff's RESPA claim. *See* Plaintiff's Motion Brief at 12; Reply at 6. Accordingly, Defendant Selene contends that, just as there are no actual damages for Plaintiff's RESPA claim, Plaintiff has failed to plead an "ascertainable loss" under the NJCFA. The Court agrees that Plaintiff's NJCFA claim fails to the extent premised on Defendant Selene's failure to respond to the February 23, 2016 letter, because Plaintiff has failed to allege an ascertainable loss arising from Selene's failure to respond. The Court is satisfied that the absence of actual damages also implies the absence of ascertainable loss. *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (quoting *Thiedemann,* 183 N.J. at 248) ("The CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.' The New Jersey Supreme Court has instructed, 'To give effect to the legislative language describing the requisite loss for private standing under the CFA, ... a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'"). Plaintiff's RESPA claim is but one of the allegations Plaintiff offers in support of his NJCFA claim — Compl. ¶ 41(f). Plaintiff's NJCFA claim on the additional bases alleged in the Complaint has gone unchallenged by Defendant Selene. *See id.* at ¶¶ 41(e),(g),(h),(i).

Specifically, among other allegations, Plaintiff alleged that Defendant Selene misrepresented the amount due on Plaintiff's loan in its February 19, 2016 trial modification offer, which purported to bill Plaintiff for past amounts that had already been recapitalized by Defendant Citi's permanent modification.[7]  Plaintiff has also at least alleged some ascertainable

---

[7] The Court observes that the parties' proffers during the Court's preliminary injunction hearing

loss as result of the alleged misrepresentation in the form of having to pay amounts towards his loan that were higher than those contractually agreed upon and paying unnecessary interest to Defendants. *See Block*, 2016 WL 6434487, at *11 (collecting cases holding that paying overbilled principal and interest payments can constitute actionable fraud damages in mortgage modification cases).[8]

## C. Count IV - Fraud

Defendant Selene moves to dismiss Plaintiff's common law fraud claim on the grounds that the pleadings are deficient under Rule 9(b) and that Plaintiff has failed to allege any misrepresentation by Defendant Selene or reasonable reliance thereon by Plaintiff. Unlike Defendant's motion on Plaintiff's NJCFA claim, Defendant at least purports to move for dismissal on all factual bases. *See* Mot. Br. at 14 (challenging the sufficiency of Compl. ¶¶ 58(o)-(u)). As was the case with Plaintiff's NJCFA claim, however, the Court finds that although any common law fraud claim based upon the factual predicate of Plaintiff's RESPA claim [Compl. ¶ 58(q)] fails, Plaintiff has at least stated a claim on the basis of Defendant Selene's offer of a trial modification [Compl. ¶ 58(p)].

"In order to establish a claim for common law fraud under New Jersey law, one must show: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or

---

strongly suggested that no permanent modification was ever entered in this case, which fact would likely dispense with the remainder of Plaintiff's case. Neither Defendant Citi nor Defendant Selene, however, has moved for summary judgment on Plaintiff's claims concerning the permanent modification, and the Court is not permitted to rely upon the proffers of defense counsel in ruling upon the present motion to dismiss. The Court would need a motion for summary judgment by Defendants addressing whether a permanent modification was ever executed by the parties and/or Plaintiff's payment history under any permanent modification agreement to adjudicate Plaintiff's claims.

[8] Again, the Court observes that the parties' proffers during the preliminary injunction hearing suggested that Plaintiff may never have made any payments after the alleged overbilling, casting doubt on the existence of damages, but no motions have been forthcoming from Defendants.

belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 627 (D.N.J. 2005). "For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard." *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 405 (D.N.J. 2016). Specifically, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must plead fraud with sufficient particularity such that he puts the defendant on notice of the "precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Here, Plaintiff has alleged that Defendant Selene's February 19, 2016 trial modification offer misrepresented the amount due on Plaintiff's loan by failing to take account of the permanent modification that had been granted by Defendant Citi. Compl. ¶ 58(p). Plaintiff has alleged that Defendants Citi and Selene acted with the requisite ill intent, in that they intentionally made misrepresentations to Plaintiff in order to "impede foreclosure alternatives" so as to profit from Plaintiff's $80,000 in equity in the Property. *Id.* at ¶ 58(v). Plaintiff has alleged that he relied upon Defendant Selene's misrepresentation when he was "forced to pay amounts towards the Loan that are higher than the contractually agreed amounts," and that he suffered injury when he in fact "made unnecessary payments to Defendants" in reliance on their misrepresentation of the amount due. *Id.* at ¶¶ 60-61. *Inter alia*, Plaintiff seeks to recover in

damages the principal and interest unnecessarily paid. *Id.* at ¶ 61. Plaintiff's allegations concerning Defendant Selene's offered trial modification are clearly sufficient to place Defendant Selene on notice of the precise fraudulent conduct alleged, at least facially state the elements of a common law fraud claim with the requisite specific facts, and meet the heightened pleading standard of Rule 9(b).

The same cannot be said of Plaintiff's other allegations of misrepresentations by Defendant Selene. Neither the nature of the misrepresentation nor Plaintiff's detrimental reliance thereon are clear regarding Defendant Selene's failure to respond to Plaintiff's requests for a detailed accounting [Compl. ¶ 58(s)], for the identity of the current investor [Compl. ¶ 58(u)], or for the force-placed insurance policy to be lifted [Compl. ¶ 58(t)]. Accordingly, taken together with the Court's holding on Plaintiff's RESPA claim, Count IV is dismissed with respect to all factual bases except Defendant Selene's offer of a trial modification [Compl. ¶ 58(p)].

**CONCLUSION**

Defendant Selene's motion is granted in part and denied in part as follows: (i) Plaintiff's RESPA claim (Count I) is dismissed; (ii) Plaintiff's NJCFA claim (Count II) is dismissed to the extent based on the factual predicate of Plaintiff's RESPA claim [Compl. ¶ 41(f)], but Defendant's motion to dismiss Count II is denied on all other bases; and (iii) Defendant's motion to dismiss Count IV is denied on the basis of Plaintiff's claim that Defendant Selene's February 19, 2016 offer of a trial modification misrepresented the amount due on Plaintiff's loan [Compl. ¶ 58(p)], but Count IV is dismissed on all other bases.

Dated: _____2/27/2017_____ 　　　　　　　　_____/s/ Freda L. Wolfson_____
　　　　　　　　　　　　　　　　　　The Honorable Freda L. Wolfson
　　　　　　　　　　　　　　　　　　United States District Judge